[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as
*Ratonel v. Roetzel & Andress, L.P.A.,* Slip Opinion No. 2016-Ohio-8013.]

NOTICE

This slip opinion is subject to formal revision before it is published in an
advance sheet of the Ohio Official Reports. Readers are requested to
promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65
South Front Street, Columbus, Ohio 43215, of any typographical or other
formal errors in the opinion, in order that corrections may be made before
the opinion is published.

SLIP OPINION NO. 2016-OHIO-8013

RATONEL ET AL., APPELLEES, *v.* ROETZEL & ANDRESS, L.P.A., ET AL.,
APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it
may be cited as *Ratonel v. Roetzel & Andress, L.P.A.,* Slip Opinion No.
2016-Ohio-8013.]

*Legal-malpractice claim—Attorney-client relationship—Attorney refused to*
*undertake representation of clients on the matter at issue—Trial court's*
*grant of summary judgment in favor of attorney and law firm reinstated.*

(No. 2015-0724—Submitted February 23, 2016—Decided December 7.)

APPEAL from the Court of Appeals of Montgomery County, No. 26259,

2015-Ohio-1166.

_____

PFEIFER, J.

{¶ 1} The issue on appeal in this case is whether the trial court's grant of
summary judgment in favor of an attorney and his law firm in a legal-malpractice
action was appropriate. For the reasons that follow, we conclude that it is clear

from the evidence that the attorney refused to undertake representation of the clients on the matter at issue and therefore he did not commit malpractice with respect to the matter. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

## I. Background

{¶ 2} The facts of the underlying case paint a tale of caution for all real-estate investors. *See Ratonel v. Keating, Muething & Klekamp*, Montgomery C.P. No. 2009 CV 03916 (June 22, 2010). Only a small part of that tale is relevant to the issue before us.

{¶ 3} Appellees Lorna B. Ratonel and her company Carmalor, Inc., entered into an agreement to purchase an apartment building known as Holden House in August 2007. Attorney Gail Pryse and her law firm, Keating, Muething & Klekamp, P.L.L. (collectively, "KMK") represented Ratonel and Carmalor during that transaction. Ultimately, Ratonel, Carmalor, and Carmalor Ohio, L.L.C., which is also an appellee herein, engaged appellants, Mark Ropchock and his law firm, Roetzel & Andress, L.P.A, to file a legal-malpractice claim against KMK, based largely on Ratonel's allegation that KMK failed to ensure that Holden House was inspected prior to the purchase. Ratonel also wanted appellants to pursue a legal-malpractice suit against KMK relating to French Village, a building in Nebraska she had purchased.

{¶ 4} The original complaint filed by Ropchock against KMK contained a paragraph that mentioned French Village, but a later-filed amended complaint did not mention French Village. Although the record reflects that Ratonel and Ropchock frequently discussed French Village, Ropchock did not file a legal-malpractice claim relating to that property. The court directed a verdict in favor of KMK, and Ratonel engaged new counsel to represent her, Carmalor, and Carmalor Ohio in a legal-malpractice claim against appellants based in part on appellants' failure to assert a legal-malpractice claim against KMK relating to French Village.

**{¶ 5}** The trial court granted summary judgment in favor of appellants on the potential malpractice claim relating to French Village. The court of appeals reversed. We granted appellants' discretionary appeal. 143 Ohio St.3d 1498, 2015-Ohio-4468, 39 N.E.3d 1270.

## II. Analysis

### A. *Elements of a Legal-Malpractice Claim*

**{¶ 6}** To establish a cause of action for legal malpractice, a plaintiff must show "the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach." *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 25. The trial court concluded that summary judgment was appropriate on the malpractice claim relating to the French Village transaction after determining that appellants did not owe a duty to Ratonel, Carmalor, or Carmalor Ohio with respect to that transaction.

**{¶ 7}** To prove that an attorney owed a duty to a plaintiff with regard to a specific legal matter, the plaintiff must establish that the scope of the attorney-client relationship included the specific legal matter. Prof.Cond.R. 1.2(c) states: "A lawyer may limit the scope of a new or existing representation if the limitation is reasonable under the circumstances and communicated to the client, preferably in writing." (Italics deleted.) But the scope of representation does not need to be expressly communicated; it can also be formed by implication based on the conduct of the attorney and the expectations of the client. *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 10.

**{¶ 8}** We now review the evidence in the case to determine whether Ropchock limited the scope of his representation to exclude the potential French Village claim.

*B. Scope of Ropchock's Representation*

**{¶ 9}** By a letter dated March 9, 2009, and signed by Ratonel on March 11, 2009, appellants agreed to represent Ratonel, Carmalor, and Carmalor Ohio regarding the "purchase of Holden House Apartments in Dayton, Ohio." The letter did not mention French Village. A paragraph in the letter addressed the possibility of appellants' being retained to render additional services. It states: "Should you decide to retain our firm for additional services not specified in this letter, we will be pleased to provide such services under such terms as you and we may agree upon." There is no writing in the record that explicitly states that appellants agreed to represent Ratonel and her companies in any legal matter relating to French Village.

**{¶ 10}** It is clear to us that the engagement letter limited the scope of representation in conformity with Prof.Cond.R. 1.2(c). It is equally clear that nothing in the letter indicates an intention on the part of appellants to represent Ratonel and her companies with respect to the alleged malpractice regarding the purchase of French Village. Nevertheless, the record is replete with references by both Ratonel and Ropchock to French Village. We will now examine the references relied upon by the parties and determine whether the initial scope of representation was expanded to include French Village.

**{¶ 11}** Ropchock sent a letter to KMK dated April 16, 2009, offering to settle the Holden House matter. The letter does not mention a claim regarding French Village.

**{¶ 12}** On May 13, 2009, Ropchock filed a complaint against KMK that stated, "The subject matter of this action is a 96 unit apartment building known as the 'Holden House Apartments' ('Holden House'), which is located in Dayton, Ohio." The complaint contained 41 paragraphs. Subsection (g) of paragraph 33 stated:

Defendants Pryse and KMK knew, or should have known, that another property for which they provided legal services, the French Village Apartments in Nebraska, was a 'Limited Dividend Property.' This means that Plaintiff [Ratonel] can only receive a yearly, not monthly, income distribution from these apartments. Defendants Pryse and KMK failed to advise Plaintiff of this obvious significant, material fact.

{¶ 13} Ratonel asserts, based on the above-quoted paragraph, that the complaint "included claims for KMK's negligent drafting of the French Village Purchase Agreement." Yet nothing else in the complaint referenced French Village. And no damages were sought based on KMK's representation of Ratonel in the French Village purchase. We cannot be certain why this paragraph was included in the complaint, but the paragraph does not assert a claim against KMK relating to the French Village transaction. Moreover, the complaint was later amended, and the amended 18-paragraph complaint did not include the above-quoted paragraph.

{¶ 14} Ropchock drafted and sent to Ratonel for review a letter dated January 20, 2010, addressed to the law firm representing KMK, and that letter included a section titled "KMK's Liability for French Village." That section contained the following sentence: "The professional negligence claim against KMK concerning French Village is a different claim which flows from a separate act of negligence." Ropchock asserts that the references to French Village were intended as a negotiating tool. Ropchock also asserts that the letter was never sent to the law firm representing KMK; there is nothing in the record that contradicts his assertion.

{¶ 15} Ropchock sent an e-mail to Ratonel on April 30, 2010, in which he stated, "I believe you assert you have two alleged claims against KMK for

malpractice in the French Village transaction." In the same e-mail, Ropchock wrote, "I think you have a strong case against KMK on the Holden House issue, and bringing up this highly speculative FV [French Village] claim weakens your good case." Ropchock concluded the e-mail by opining that "there is no viable claim against KMK on FV."

{¶ 16} A ten-page letter from Ropchock to the law firm representing KMK, dated May 11, 2010, included a reference to French Village. The reference did not suggest that a claim relating to French Village would be pursued; rather, the reference to French Village was made merely as an example to support the assertion that an attorney from KMK had been untruthful when he was deposed. Later in the letter, Ropchock made a settlement demand based on the Holden House transaction; the French Village transaction was not mentioned in the demand.

{¶ 17} On August 4, 2010, Ropchock filed the amended complaint against KMK, alleging malpractice based on KMK's representation of Ratonel in the purchase of Holden House. The complaint did not include a claim based on KMK's representation of Ratonel in purchasing French Village. In her deposition, Ratonel testified that she knew that the complaint did not include a claim relating to her purchase of French Village. She admitted that Ropchock had told her "several times" that she did not have a claim regarding French Village and that Ropchock had "refused to" file such a claim. When asked whether she had consulted with another attorney about a claim relating to French Village, Ratonel responded, "I wanted to."

*C. Appropriateness of Summary Judgment*

{¶ 18} The trial court granted summary judgment to appellants on the claim at issue in this case. Our review of cases involving a grant of summary judgment is de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24.

6

> Summary judgment may be granted when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

*M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 969 N.E.2d 1261, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

{¶ 19} Viewing the evidence most strongly in favor of Ratonel, we come to the same conclusion as the trial court. There is significant evidence in the record that Ratonel wanted Ropchock to represent her in asserting a legal-malpractice claim relating to the French Village transaction. There is also significant evidence that Ropchock seriously considered and investigated asserting a French Village claim. But there is clear evidence that he ultimately determined that such a claim was not viable and that he communicated to Ratonel that he was not going to represent her in asserting it.

{¶ 20} We note that it is common for a client and counsel to discuss multiple potential claims and then later, after the attorney gathers evidence, agree to have the attorney pursue only those claims he believes are viable.

### III. Conclusion

{¶ 21} We conclude that no genuine issue of material fact exists with regard to the issue in this case and that, viewing the evidence in favor of appellees, reasonable minds could come to but one conclusion—that appellants did not agree to represent appellees regarding their potential claim of legal malpractice against KMK relating to the purchase of French Village. Accordingly, we reverse the

judgment of the court of appeals and reinstate the trial court's grant of summary judgment in favor of appellants.

Judgment reversed.

O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LUPER SCHUSTER, J., dissents.

BETSY LUPER SCHUSTER, of the Tenth District Court of Appeals, sitting for O'CONNOR, C.J.

_____

Sam G. Caras, David M. Deutsch, Mitchell J. Anderson, and Gregory M. Gantt, for appellees.

Bieser, Greer & Landis, L.L.P., David C. Greer, and James H. Greer, for appellants.

_____