[Cite as *Myocare Nursing Home, Inc. v. Hohmann*, 2018-Ohio-1195.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105907**

# MYOCARE NURSING HOME, INC.

PLAINTIFF-APPELLANT

vs.

# WILLIAM HOHMANN, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-823107

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 29, 2018

**ATTORNEY FOR APPELLANT**

Stephen D. Dodd
Stephen D. Dodd Co., L.L.C.
38109 Euclid Avenue
Willoughby, Ohio   44094


**ATTORNEYS FOR APPELLEES**

**For William Hohmann**

David Ross
Reminger Co., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio   44115

**For Kenneth Boukis**

Matthew B. Barbara
Taft Stettinius & Hollister, L.L.P.
200 Public Square, Suite 3500
Cleveland, Ohio   44114

Holly M. Wilson
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue West
Cleveland, Ohio   44115

SEAN C. GALLAGHER, J.:

{¶1} Myocare Nursing Home, Inc. ("Myocare"), appeals the judgment entered in favor of William Hohmann ("Attorney Hohmann"), Kenneth Boukis, and Hohmann, Boukis & Curtis, L.P.A. (collectively "Hohmann"), upon Myocare's legal malpractice claims and the law firm's counterclaim for unpaid legal fees. For the following reasons, we affirm.

{¶2} Myocare retained Hohmann in June 2011 to commence collection efforts on a judgment Myocare obtained against a third party ("debtor"). Originally, Hohmann agreed to undertake the representation for a "basic contingent fee of 5% and an additional amount depending upon whether or not the claim is contested." The debtor had been awarded a multi-million-dollar judgment in an unrelated action filed in Summit County, and at the time, the debtor's case was pending in the appellate court. An appellate bond had been posted with the Summit County Clerk of Courts. Myocare intended to use the debtor's judgment and the bond in that case in order to satisfy the $253,828.66 outstanding debt.

{¶3} On June 22, Hohmann filed a creditor's bill action on behalf of Myocare in Cuyahoga County Court of Common Pleas, naming the Summit County Clerk of Courts as a defendant, in an effort to establish a lien on the $2.5 million bond. The debtor, around the same time, executed a settlement agreement in which the bond would be used for partial satisfaction of the judgment he received. Ninety days later, the debtor was to be paid an additional amount of approximately $190,000. Sometime on June 22, the

Summit County Clerk of Courts transferred the multi-million-dollar bond to the debtor's attorney, at Buckingham, Doolittle & Burroughs ("Buckingham"), as partial satisfaction of the judgment awarded to the debtor.

{¶4} Realizing the transfer had occurred, Hohmann immediately contacted the debtor's attorney at Buckingham and notified him of the lien established against the bond. Buckingham paid the debtor's other creditors but retained $260,000 to cover Myocare's lien. Perhaps partially concerned that the lien established by the creditor's bill had been ineffective to prevent the transfer, Hohmann followed up by filing a garnishment of property proceeding in municipal court against Buckingham. In the process, Myocare's judgment lien was transferred to municipal court on June 30, and in mid-July, the notice of garnishment was served. Myocare claims there is a dispute regarding the date of the filing; however, the earliest date that could be considered as the commencement of the garnishment proceedings was June 30. After the filing of the garnishment proceedings, Hohmann was discharged as Myocare's attorney and new counsel entered an appearance.

{¶5} Before the garnishment action was filed, a second creditor entered the picture. On June 27, First Federal of Lakewood Bank and Trust ("First Federal") filed its own creditor's bill action, also in the Cuyahoga County Court of Common Pleas, against Buckingham in an attempt to place a lien on the debtor's money. First Federal was owed over $700,000 by the debtor. Both Myocare's and First Federal's creditor's bills were consolidated into one action, and Myocare appears to have abandoned the garnishment proceeding. The creditor's bill actions were settled among the parties with

Myocare agreeing to receive $160,733.26 and First Federal agreeing to receive $250,000 as partial satisfaction of their respective judgments.

{¶6} Myocare then filed a legal malpractice action against Hohmann, claiming that its failure in amending the June 22 creditor's bill to name Buckingham as a defendant caused Myocare to lose its priority to First Federal over the $260,000 Buckingham withheld. The trial court granted partial summary judgment upon the malpractice action in favor of Hohmann. The parties filed a contingent dismissal entry in order to allow Myocare to challenge the interlocutory ruling. Myocare appealed the partial summary judgment in *Myocare Nursing Home, Inc. v. Hohmann*, 8th Dist. Cuyahoga No. 104290, 2017-Ohio-186. The appeal was dismissed for the want of jurisdiction. *Id.*

{¶7} Upon remand, the trial court resolved the counterclaim for unpaid legal services in Hohmann's favor following a bench trial, ultimately awarding Hohmann $20,452 in reasonable attorney fees.

{¶8} In the current appeal, Myocare claims that it demonstrated the existence of genuine issues of material fact with respect to whether Hohmann committed legal malpractice. According to Myocare, the failure to amend its creditor's bill effectively gave First Federal priority over the debtor's monies being held by Buckingham.

{¶9} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a

matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.

{¶10} There is one evidentiary issue that must be briefly addressed. Myocare claims that Attorney Hohmann's affidavit attached to the motion for summary judgment contained hearsay that should have resulted in the entire affidavit being excluded under Civ.R. 56. Attorney Hohmann averred that the Summit County Clerk of Courts transferred the bond funds two days after the debtor reached a settlement in his litigation and that Buckingham distributed the funds to the debtor's creditors.

{¶11} The decision to admit or exclude affidavit testimony "is left to the discretion of the trial court, and we will not disturb that decision on appeal absent a showing that the trial court abused its discretion in a manner that materially prejudices a party." *Logansport Savs. Bank, FSB v. Shope*, 10th Dist. Franklin No. 15AP-148, 2016-Ohio-278, ¶ 28, citing *Cashlink, L.L.C. v. Mosin, Inc.*, 10th Dist. Franklin No. 12AP-395, 2012-Ohio-5906, ¶ 9; and *Boggs v. The Scotts Co.*, 10th Dist. Franklin No. 04AP-425, 2005-Ohio-1264, ¶ 35. Myocare did not dispute the veracity of the averments and, in fact, agreed that both events occurred in its own factual recitation. Further, the inadmissibility of individual averments does not render the entire affidavit inadmissible — it only affects the individual statements. Myocare failed to demonstrate the need to reject the entire affidavit. App.R. 16(A)(7).

{¶12} In order to "establish a cause of action for legal malpractice, a plaintiff must show 'the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach.'" *Ratonel v. Roetzel & Andress, L.P.A.*, 147 Ohio St.3d 485, 2016-Ohio-8013, 67 N.E.3d 775, ¶ 6, quoting *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 25. Generally when the malpractice is alleged to have occurred in the course of litigation, "although not always, 'the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case.'" *Pipino v. Norman*, 7th Dist. Mahoning No. 16 MA 0153, 2017-Ohio-9048, ¶ 56, quoting *Vahila v. Hall*, 77 Ohio St.3d, 421, 427-428, 1997-Ohio-259, 674 NE.2d 1164; *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 18.

{¶13} Along those lines, Hohmann contends that Myocare's settlement of the creditor's bill actions waived any malpractice that could have occurred because Myocare voluntarily relinquished its rights through the settlement of the creditor's bill action and the failure to pursue the garnishment proceeding. *Sawchyn v. Westerhaus*, 72 Ohio App.3d 25, 29, 593 N.E.2d 420 (8th Dist.1990) (settlement of underlying claim generally extinguishes or merges the rights to hold defendants liable for malpractice in the underlying claim); *but see E.B.P., Inc. v. Cozza & Steuer*, 119 Ohio App.3d 177, 182, 694 N.E.2d 1376 (8th Dist.1997) (settlement of underlying action does not always operate as a waiver of a legal malpractice claim). We need not consider Hohmann's claim regarding

proximate causation because we agree with the trial court that Hohmann did not deviate from the standard of care as a matter of law.

{¶14} "'A creditor's bill action enables a judgment creditor to secure a lien on those assets of the judgment debtor that cannot be reached by the mere execution of the judgment.'" *Luck v. Klayman*, 8th Dist. Cuyahoga No. 105239, 2017-Ohio-8231, ¶ 17, quoting *Am. Transfer Corp. v. Talent Transport, Inc.*, 8th Dist. Cuyahoga No. 94980, 2011-Ohio-112, ¶ 8, and *Union Properties, Inc. v. Patterson*, 143 Ohio St. 192, 54 N.E.2d 668 (1944). A creditor's bill is an action in equity and is only available if the party has no legal recourse. *In re Estate of Mason*, 109 Ohio St.3d 532, 537, 2006-Ohio-3256, 849 N.E.2d 998. R.C. 2333.01 provides as follows:

> When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action.

*Id.* Thus, where a judgment debtor " has insufficient property subject to levy on execution to satisfy the judgment, then any equitable interest he possesses in any of the enumerated items in the statute shall be subject to payment of the judgment." *Fed. Deposit Ins. Co. v. Willoughby*, 19 Ohio App.3d 51, 55, 482 N.E.2d 1267 (8th Dist.1984).

{¶15} The filing of a creditor's bill establishes a lien on the identified property against the named parties in the case. *Id.* at 55; *see also Domo v. Boulder Bluff Corp.*, 6th Dist. Ottawa No. 92OT065, 1993 Ohio App. LEXIS 6117, 4 (Dec. 17, 1993), citing

*Gaib v. Gaib*, 14 Ohio App.3d 97, 99, 470 N.E.2d 189 (10th Dist.1983). The lien is effective from the date the creditor's bill is commenced, which under Civ.R. 3 occurs upon the filing of the complaint for a creditor's bill. *Willoughby* at 55; *see also Morgan Bank, N.A. v. Security-Connecticut Life Ins. Co.*, 9th Dist. Summit No. 20594, 2001-Ohio-1879, *15 (string citing cases in support of the proposition of law); *Huston Assocs., Inc. v. VWV, Inc.*, 11th Dist. Lake No. 92-L-050, 1992 Ohio App. LEXIS 6474, 6 (Dec. 18, 1992) (lien established on new party defendant in creditor's bill action upon the serving of the amended complaint on the new party defendant); *but see Rushworth v. Rosie*, 11th Dist. Geauga No. 98-G-2186, 1999 Ohio App. LEXIS 4940, 9 (Oct. 22, 1999) (extending *VWV* for the proposition that a lien is not established until service of the original complaint is perfected). The lien obtained through the filing of a creditor's bill complaint, however, is contingent upon the successful prosecution of the action. *Huwe v. Knecht*, 10 Ohio App. 487, 495 (1st Dist.1919). In other words, even though the party establishes a lien through commencing the action, the lien is subject to the party's ability to prosecute the creditor's bill action. If the creditor's bill action fails, so does the lien.

{¶16} On the opposite end of the spectrum, a party may initiate legal proceedings to garnish personal property of a debtor held by third party. R.C. 2716.11; *Wilson v. Dixon*, 73 Ohio App.3d 706, 708, 598 N.E.2d 158 (8th Dist.1991). Personal property includes money, property, or credits other than personal earnings. R.C. 2716.11(C). A judgment creditor may only garnish the property of the debtor if the "property is in the possession of a person other than the person against whom the judgment was obtained."

R.C. 2716.01(B). If those conditions are met, the creditor must act "only through a proceeding in garnishment." Thus, when a third party possesses monies of a debtor, those monies can only be encumbered through the legal process of an action in garnishment.

{¶17} The difference between the two forms of collection are important. In *In re Estate of Mason*, 109 Ohio St.3d 532, 2006-Ohio-3256, 849 N.E.2d 998, the Ohio Supreme Court addressed the question of when an interest converts from being equitable in nature, and thus the property would be attachable through a creditor's bill, into a legal interest subject to garnishment. *Id.* at ¶ 18. Although the interest at issue dealt with an interest in an estate, the court broadly concluded as follows:

> Garnishment is an action in law "by which a creditor seeks satisfaction of the indebtedness out of an obligation due the debtor from a third person, the garnishee." Alternatively, a creditor's bill is an action in equity by which a judgment creditor seeks to subject an interest of the judgment debtor that cannot be reached on execution to the payment of the creditor's existing judgment.

(Internal citations omitted.) *Id.,* citing *Union Properties, Inc. v. Patterson*, 143 Ohio St. 192, 195, 54 N.E.2d 668 (1944), and R.C. 2333.01. If a debtor's property is reachable through garnishment proceedings, a creditor's bill cannot be used to encumber that property. Accordingly, it was concluded that a creditor's bill is the appropriate mechanism to secure the interest in potential distributions to heirs of an estate until the distribution actually occurs, at which time the equitable claim converts to a legal one subject to a garnishment proceeding if the distribution is held by a third party. *Id.* at ¶ 22.

**{¶18}** Thus, until the monies upon which the encumbrance is sought are actually distributed to a party to hold on behalf of a judgment debtor, the creditor's bill is the appropriate action. *See, e.g., Lakeshore Motor Freight Co. v. Glenway Industries, Inc.*, 2 Ohio App.3d 8, 10, 440 N.E.2d 567 (1st Dist.1981) (anticipated proceeds from a debtor's successful lawsuit attachable through R.C. 2333.01); *WesBanco Bank, Inc. v. Ettayem*, 10th Dist. Franklin Nos. 14AP-452 and 14AP-455, 2015-Ohio-1230, ¶ 20 (unvested interest in contractually owed lease payments attachable through R.C. 2333.01). However, once a third party attains possession of monies or other property of the judgment debtor, the creditor must file an action in garnishment under R.C. Chapter 2716. *See, e.g., Dixon* at 709.

**{¶19}** In this case, the Summit County Clerk of Courts maintained a bond posted in the action on behalf of someone other than the debtor. As long as the clerk maintained those funds, the creditor's bill action was the appropriate action to encumber any potential distribution to the debtor. Once the bond was transferred to the debtor as partial satisfaction of his judgment, and thus once the intangible property become the debtor's tangible property, the monies were the property of the debtor and reachable through an action to garnish property. Buckingham's acceptance of the transfer placed the monies reachable through garnishment because Buckingham was in possession of the debtor's monies. *See generally In re Estate of Mason.*

**{¶20}** With that in mind, we note the absence of a fact that would have streamlined our analysis. Nothing from the record establishes when the Summit County Clerk of

Courts transferred the bond proceeds to Buckingham, only the day is known. We, therefore, have to address two scenarios: (1) if Myocare's creditor's bill was filed before the transfer, and (2) if the clerk transferred the funds before the creditor's bill was commenced, and thus the lien would not have encumbered the transfer. Under either scenario, however, Hohmann did not commit legal malpractice as a matter of law.

{¶21} If Myocare's creditor's bill action was filed before the clerk transferred the funds to Buckingham, Myocare's contingent lien was established upon commencement of the creditor's bill action. In that case, Buckingham was put on notice of the encumbrance after Hohmann contacted Buckingham and provided notification of the lien. To require the creditor to chase down the encumbered property and to name all such recipients in the creditor's bill action would defeat the purpose of the lien being established upon the filing of the creditor's bill. The purpose of establishing a lien is to prevent the occurrence of the debtor of the judgment debtor making payments to the judgment debtor. *Union Bank of Rochester v. Union Bank of Sandusky*, 6 Ohio St. 254, 258 (1856). In this respect, once the lien is established, the creditor's bill has a lis pendens effect and any party receiving any portion of the encumbered property does so subject to the encumbrance. *Id.* at syllabus. If Myocare's creditor's bill action was filed before the transfer, Myocare retained priority over the monies held by the Summit County Clerk of Courts such that no further action by Hohmann was required other than prosecuting the creditor's bill action to maintain the lien.

**{¶22}** If, on the other hand, the clerk transferred the funds to Buckingham before Myocare commenced the creditor's bill action, then the monies distributed to Buckingham were the debtor's property; the monies did not belong to Buckingham. Buckingham, as a "person other than the person against whom judgment was obtained" in the statutory parlance, was in possession of property of the debtor (the $2.5 million the debtor received through the settlement of the unrelated action). Under R.C. 2716.01(B), the only remedy any creditor had after Buckingham took possession of the debtor's settlement proceeds was through an action to garnish property. *In re Estate of Mason*, 109 Ohio St.3d 532, 2006-Ohio-3256, 849 N.E.2d 998, ¶ 18; R.C. 2716.01(B) (a creditor may garnish the property of a debtor "only through a proceeding in garnishment and only in accordance with this chapter").

**{¶23}** Either way, amending Myocare's creditor's bill against Buckingham was unnecessary. The contingent lien established by a creditor's bill is subject to the creditor's ability to avail itself of R.C. 2333.01, which expressly applies if the debtor lacks sufficient personal or real property on which to levy execution. If Myocare was required to amend its creditor's bill to name Buckingham following the transfer of the funds — in other words, if the lien established by the initial filing was insufficient to encumber the property — such an amendment would have been facially deficient in that Buckingham possessed the debtor's monies that were subject to garnishment proceeding under R.C. Chapter 2716. Whatever lien would have been created by the amended complaint would have failed because a creditor's bill action against Buckingham could

not have been successful as a matter of law — the allegation that the debtor had no funds, upon which an action in garnishment would lie, would have been without support.

**{¶24}** Myocare's entire malpractice claim is predicated upon Hohmann's action, which Myocare believes caused it to lose priority in the initial distribution of the $2.5 million. There is no dispute that Myocare had established a lien on the subsequent distribution of approximately $190,000 that was to occur 90 days after the initial transfer through the timely filed creditor's bill against the Summit County Clerk of Courts. The implications of First Federal's creditor's bill action is irrelevant; Myocare either secured its lien on the entirety of the settlement proceeds that flowed through the Summit County Clerk of Courts through the filing of the creditor's bill action, or it secured its interest in the $2.5 million through the garnishment action that was filed after Buckingham took possession of the debtor's monies. There is no dispute that Myocare was the only creditor to initiate garnishment proceedings against Buckingham. The trial court did not err in granting summary judgment upon Myocare's claims. As a matter of law, Myocare was unable to establish that Hohmann committed legal malpractice by failing to amend its creditor's bill action to name Buckingham as a defendant.

**{¶25}** Finally, Myocare claims the trial court's judgment upon Hohmann's counterclaim is against the manifest weight of the evidence. Myocare concedes that when a client discharges an attorney or law firm, the attorney cannot recover on the contingent-fee agreement. The discharged attorney can only recover the reasonable value of services rendered at the time of discharge. *Reid, Johnson, Downes, Andrachik*

*Webster v. Lansberry*, 68 Ohio St.3d 570, 574, 629 N.E.2d431 (1994). "A trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in quantum meruit should consider the totality of the circumstances involved in the situation[,]" which included (1) the number of hours worked by the attorney before the discharge; (2) the recovery sought; (3) the skill demanded; (4) the results obtained; and (5) the attorney-client agreement itself. *Id.* at paragraph three of the syllabus. It is not a defense to claim that the attorney failed to complete the services undertaken; a discharged attorney is entitled to compensation for services rendered. *Id.* at 574.

{¶26} Myocare contends that Hohmann's counterclaim only asserted a claim for breach of contract, and therefore, Hohmann cannot recover based on the theory of quantum meruit. As conceded, however, the only theory of recovery available to Hohmann was through quantum meruit. *Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 70, 541 N.E.2d 448 (1989). In light of that fact, the counterclaim was sufficient to provide Myocare notice of the theory of recovery under which Hohmann was proceeding. Civ.R. 8. In addition, even if we assumed the counterclaim was insufficiently pleaded, the trial court expressly proceeded to consider the quantum meruit theory under Civ.R. 15(B), which provides that if evidence is objected to at trial on the basis that the evidence is not within the issues advanced in the pleadings, the court may allow the pleadings to be amended. Myocare did not object to the trial court's reliance on Civ.R. 15(B). Tr. 38:12-14.

**{¶27}** We briefly note that although a discharged attorney's recovery is capped at the value of the disavowed contingent fee arrangement, in this case the trier of fact was required to determine whether the original 5 percent contingent fee arrangement between Hohmann and Myocare was applicable in light of the limiting language in the contract, which provided that Hohmann would not bind himself to a 5 percent contingent fee if the issue became disputed or complicated. There was evidence to that effect, and Hohmann attempted to amend the fee arrangement before Myocare discharged his services. As such, any remaining arguments pertaining to the counterclaim challenge the weight of the evidence.

**{¶28}** Manifest weight of the evidence "refers to the greater amount of credible evidence and relates to persuasion * * *." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. The reviewing court must "[weigh] the evidence and all reasonable inferences, [consider] the credibility of witnesses, and [determine] whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *.'" *Id.* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001). Every reasonable presumption is made in favor of the judgment. *Id.*, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.* Plain

error, in the civil context, is proceeded upon with "the utmost caution." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 1997-Ohio-401, 679 N.E.2d 1099.

**{¶29}** Myocare's sole claim with respect to the weight of the evidence is that the evidence offered in support of the time spent, the requisite knowledge needed to perform the services Myocare required, and the interruption of the attorney's ability to perform other services was not based on competent or credible evidence because the self-serving evidence produced at trial came from Attorney Hohmann. Myocare did not present any contradicting evidence and solely relied on the self-serving nature of Attorney Hohmann's testimony. The trier of fact was in the best position to adjudge the witness's credibility. This is not an exceptionally rare case warranting a conclusion that the judgment is against the manifest weight of the evidence to prevent the miscarriage of justice. *Goldfuss* at 121.

**{¶30}** The judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR
KEY WORDS:
Appeal No. 105907 – Myocare Nursing Home, Inc. v. William Hohmann, et al.

Creditor's bill; garnishment; legal malpractice; manifest weight; attorney fees. The summary judgment entered in favor of the attorney and law firm upon the legal malpractice claims is affirmed because as a matter of law, the attorney did not breach a standard of care by losing priority over certain monies the debtor received through an unrelated settlement. The trial court's award of attorney fees is not against the manifest weight of the evidence.