JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, MCM Funding 1997-1, Inc. ("MCM"), appeals from the judgment of the Common Pleas Court granting the motion for summary judgment of defendant-appellee, Amware Distribution Warehouses MM, LLC ("MM") and denying its motion for summary judgment. For the reasons that follow, we affirm.
 {¶ 2} MCM filed this lawsuit in June 2004, asserting claims for breach of contract and unjust enrichment as a result of MM's alleged failure to pay rent. MCM alleged that, although it was not the original landlord on MM's lease, the lease and rents accruing therefrom had been validly assigned to it.
 {¶ 3} MCM was the mortgage lender in connection with the purchase of real property and an office/warehouse building located at 19000 Holland Road in Brook Park, Ohio. The mortgagor was Amware Distribution Warehouses 6, Inc. ("Amware"), a distinct and unrelated corporate entity from MM. As part of its mortgage transaction, Amware executed an Assignment of Leases and Rents, in which it agreed that, in the event of default on the mortgage, its rights to receive rent from the property were assigned to MCM.
 {¶ 4} Amware subsequently leased the premises to Park Place Management, Inc. ("Park Place"), whic then subleased a portion of the premises to MM.
 {¶ 5} On June 6, 2002, involuntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") were filed against Park Place, and others, in the United States Bankruptcy Court for the Northern District of Ohio. These involuntary cases were subsequently converted into voluntary cases under Chapter 11 of the Bankruptcy Code, orders for relief were entered therein, and the Bankruptcy Court ordered that the cases be jointly administered as In re Level Propane Gases,Inc., et al., Case No. 02-16172 (the "Bankruptcy Case").
 {¶ 6} At some point, Amware defaulted on its mortgage to MCM. On August 1, 2002, MCM filed a complaint in foreclosure against Amware in the Cuyahoga County Court of Common Pleas. The case was captioned MCM Funding 1997-1, Inc. v. Amware DistributionWarehouses, Inc., et al., Case No. CV-02 477571. The court subsequently appointed Mark Boehnlein as receiver for the premises.
 {¶ 7} On September 11, 2002, Amware followed in Park Place's footsteps, and filed a voluntary petition for relief in the Bankruptcy Court. Amware's case was consolidated with the In reLevel Propane Gases cases. Thus, both Park Place and Amware were debtors in the Bankruptcy Case. The lease agreement between Amware and Park Place was subsequently rejected by the trustee in the Bankruptcy Court.
 {¶ 8} Various disputes arose among the parties to the Bankruptcy Case, which resulted in the filing of three separate adversary proceedings in the Bankruptcy Court. These disputes were ultimately settled and memorialized in a Settlement Agreement and Mutual Release ("Settlement Agreement I") executed on December 9, 2003.
 {¶ 9} In Settlement Agreement I, Park Place and Amware, as debtors, "for themselves, their estates and their respective successors and assigns," released MM "from any and allclaims, demands, damages, actions, causes of action or suits of any kind or of any nature whatsoever, whether legal, equitable, administrative or otherwise, which the Debtors or their respective successors and assigns * * * had or currently may have * * *." (Emphasis added.)
 {¶ 10} The Bankruptcy Court subsequently granted the debtors' motion for entry of an order approving the compromise of claims and terms of the Settlement Agreement and Mutual Release executed on December 9, 2003.
 {¶ 11} Meanwhile, on June 2, 2003, Boehnlein, as receiver for the premises, filed suit against MM in Cuyahoga County Common Pleas Court for unpaid rents for the months of March, April and May, 2003. That case was captioned Boehnlein v. AmwareDistribution Warehouses, MM, LLC, Case No. CV-03 502303.
 {¶ 12} MM subsequently entered into a settlement agreement with Boehnlein to resolve the rent claims ("Settlement Agreement II"). Settlement Agreement II, which was executed on February 20, 2004, provided that:
 {¶ 13} "4. Each of the above-mentioned parties, and onbehalf of its respective successors and assigns, * * * hereby releases and discharges the other party and its respectivesuccessors and assigns * * * from all rights, claims, demands, damages, actions and causes of action which each party and itsabove-mentioned others now have or may have in the future against the other party and/or the other party's above-mentioned others arising from their disputes and differences which are or were the subject matter of Count One in the Court Case, anymonetary claims which were or could have been filed in the CourtCase, any monies owed between the parties and/or claims of anynature whatsoever arising from the transactions and interactionsamong the parties from the beginning of time until today." (Emphasis added.)
 {¶ 14} Notwithstanding Settlement Agreements I and II, MCM filed suit against MM seeking payment of rents for its occupation and use of the premises from July 1, 2002 through February 28, 2003. Both parties subsequently filed motions for summary judgment. MCM now appeals from the trial court's order granting MM's motion.
 {¶ 15} Civ.R. 56(C) provides that summary judgment is appropriate when: 1) there is no genuine issue of material fact, 2) the moving party is entitled to judgment as a matter of law, and 3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370;Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 56(C). Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105.
 {¶ 16} In its assignments of error, MCM argues that the trial court erred in: 1) denying its motion for summary judgment and granting MCM's motion for summary judgment; 2) failing to conclude that it is entitled to collect unpaid rents from M and 3) failing to conclude that MM was unjustly enriched, to the detriment of MCM, by occupying and using the premises for eight months without paying rent. The gist of MCM's argument is that upon the institution of involuntary bankruptcy proceedings against Park Place on June 6, 2002, Park Place's right to collect rent from MM, its subtenant, contractually passed to Amware. Because Amware had already assigned to MCM all of its present and future rights to receive rents from the premises, Park Place's default effectively transferred the rights to collect rents from MM to MCM and, therefore, MCM is entitled to unpaid rents from MM. We find no merit to MCM's arguments.
 {¶ 17} First, courts in Ohio have consistently held that a landlord/lessor may not assert a breach of contract action against a subtenant. As this court stated in House of LaroseCleveland, Inc. v. Lakeshore Power Boats, Inc. (June 18, 1992), Cuyahoga App. No. 60904:
 {¶ 18} "The law is clear in Ohio and other jurisdictions that a subtenant owes no responsibility to the original lessor because there is neither privity of contract nor privity of estate between the two. * * * A sublessee can maintain no action against the original lessor upon the original lease, neither can the lessor maintain action against the sublessee upon the original lease." (Citations omitted). See, also, Zevchik v. Kassai (Dec. 24, 1997), Cuyahoga App. No. 71823 ("Because the landlord-tenant relationship is based on concepts of privity of contract and privity of estate, a tenant's liability for rent payments is contractual in nature. * * * [I]n a sublease, there is no privity of contract between the sublessee and the landlord * * *.") (Citations omitted.)
 {¶ 19} Here, MM subleased a portion of the premises from Park Place, which had leased the premises from Amware. Thus, there was no privity between MM and Amware, and Amware could assert no claims against MM arising out of the lease. MCM was even one more step removed: it was Amware's assignee of the right to collect rents. Where a party assigns its rights under a contract to an assignee, the assignee stands in the shoes of the party/assignor for purposes of the contract and possesses no greater rights than the assignor. Fire Assn. of Philadelphia v.State Auto Mut. Ins. Co. (Jan. 26, 1938), Summit App. No. 2929. In this case, MCM stands in the shoes of Amware by virtue of the assignment of rents. Because the lack of privity between Amware and MM precludes any claims by Amware against MM arising out of the lease, MCM's claims against MM must similarly fail.
 {¶ 20} Moreover, any collection efforts against MM are barred as a result of Park Place's bankruptcy. It is well settled that all property in which the debtor has an interest at the time of filing the bankruptcy petition, including commercial real estate leases, and the rents derived therefrom, becomes property of the bankruptcy estate. 11 U.S.C. § 541(a)(1) provides in pertinent part that:
 {¶ 21} "(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property wherever located and by whomever held:
 {¶ 22} "(1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.
 {¶ 23} "* * *
 {¶ 24} "(6) Proceeds, product, offspring, rents or profits of or from property of the estate, except such as earnings from services performed by an individual debtor after the commencement of the case."
 {¶ 25} Thus, both the sublease and the rents accruing thereon were part of the bankruptcy estate of Park Place and governed by the Bankruptcy Court.
 {¶ 26} MCM argues, citing Butner v. United States (1979),440 U.S. 48, that bankruptcy law is not applicable, however, because "the question of whether a security interest in property extends to rents and profits derived from property is one that should be resolved by reference to state law." MCM misconstrues the holding of Butner.
 {¶ 27} Butner stands for the proposition that in determining whether a mortgagee has the right to rents collected during the period between the mortgagor's bankruptcy and the foreclosure sale of the mortgaged property, a federal bankruptcy court should look to the law of the state where the property is located. "Butner by its plain language allows a mortgagee to collect the rents of the property immediately upon the default of the mortgagor if the mortgagee has that right under state law,
notwithstanding the bankruptcy of the mortgagor." In re: Mt.Pleasant Ltd. Partnership (1992), 144 B.R. 727, 732. (Emphasis added.)
 {¶ 28} As explained in In re Sam A. Tisci, Inc. (N.D. Ohio 1991), 133 B.R. 857, 859, the law in Ohio is that a mortgagee may collect rents upon the default of the mortgagor only upon taking possession of the property or upon the appointment of a receiver:
 {¶ 29} "A mortgage of real property does not per se operate as a specific pledge of the rents and profits therefrom. To have that effect the mortgage must expressly include them. But even though a mortgage contains a pledge of rents and profits, and even though the condition is broken, the mortgagor is entitled to them so long as he retains possession. To be entitled to the rents and profits specifically pledged, the mortgagee must have taken possession of the premises or must have taken some action, such as the appointment of a receiver to reduce the rents and profits to possession. * * *
 {¶ 30} "11 U.S.C. § 541 provides that the commencement of a case under §§ 301, 302, and 303 creates an estate which, in general, is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case. Furthermore, the automatic stay provision, 11 U.S.C. § 362(a), prohibits a mortgagee from obtaining either possession of the mortgaged property or the appointment of a receiver to collect the rents therefrom without first requesting the bankruptcy court to grant relief from stay under 11 U.S.C. § 362(d) * * *."
 {¶ 31} Thus, Tisci makes clear that once the bankruptcy petition was filed by Park Place, the premises and the rents accruing thereon from the Sublease became part of Park Place's bankruptcy estate and passed into the exclusive jurisdiction of the Bankruptcy Court and, therefore, MCM was prohibited from either taking possession of the property or requesting the appointment of a receiver in order to collect the rents absent a request for relief from stay from the Bankruptcy Court. There is nothing in the record, however, which indicates that MCM ever requested a relief from stay in the Park Place bankruptcy in order to pursue its remedies regarding collection of the rents, or that MCM even asserted a claim regarding the rents in the Bankruptcy Court.
 {¶ 32} MCM argues, however, that the rents did not become part of Park Place's bankruptcy estate because the trustee rejected the lease between Amware and Park Place pursuant to11 U.S.C. § 365. MCM contends, in reliance on In re Miller (C.A.6 2002), 282 F.3d 874, 877, that the rejection of the lease by the bankruptcy trustee is treated as a breach of the lease that took place immediately prior to the filing of the bankruptcy petition against Park Place on June 6, 2002, and thus, concurrently with the pre-petition breach, Park Place's right to collect rents from MM transferred to MCM.
 {¶ 33} This argument does not help MCM. As explained by the Sixth Circuit Court of Appeals in In re Miller, supra, "the situation that results from a breach of a lease due to rejection of it under § 365 is that the lessor becomes an unsecuredcreditor with a pre-petition claim for damages." Id. (Emphasis added.) Thus, as a result of the trustee's rejection of the lease, MCM became an unsecured creditor of a pre-petition debt and was required to assert its claim regarding the rents in the bankruptcy proceedings.
 {¶ 34} MCM fails to explain why it did not do so.
 {¶ 35} Because the rents were part of Park Place's bankruptcy estate, it is apparent that MCM's claims for unpaid rent are barred by the doctrine of res judicata. In Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, at paragraph one of the syllabus, the Supreme Court of Ohio stated, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." A claim is barred by the doctrine of res judicata if the following elements are present: 1) a prior final, valid decision on the merits by a court of competent jurisdiction; 2) a second action involving the same parties, or their privies, as the first; 3) a second action raising claims that were or could have been litigated in the first action; and 4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. Portage Cty. Bd. of Commrs. v. Akron,109 Ohio St.3d 106, 2006-Ohio-954, at ¶ 84. A settlement agreement between parties operates as res judicata to the same extent as an adjudication on the merits. Goff v. Slywka (Feb. 24, 1994), Cuyahoga App. No. 64690, citing Gilbraith v. Hixson (1987),32 Ohio St.3d 127, 129.
 {¶ 36} Here, Amware and the receiver entered into settlement agreements which released the rights of MCM to pursue any further action under the lease and the sublease. MCM's argument that it was not a party to the agreements is without merit. With respect to Settlement Agreement I, MCM was represented by Amware, its assignor, with whom it was in privity. With respect to Settlement Agreement II, which represents a final adjudication on the merits between Amware and the receiver regarding rents owed to MCM by MM, MCM was in privity with both Amware and the receiver. MCM has produced no evidence to indicate that it did not receive notice of the proposed settlements or that it objected to them in any way. Accordingly, MCM's claims regarding unpaid rent, having been previously adjudicated and resolved, are barred by the doctrine of res judicata.
 {¶ 37} For the foregoing reasons, the trial court did not err in granting summary judgment in favor of MM and, therefore, appellant's first, second and third assignments of error are overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, P.J., and Kenneth A. Rocco, J.,concur.