HALL, J.
{¶ 1} The plaintiff-appellant, Robert Bogart, appeals the entry of summary judgment for the defendants-appellees, attorney Michael Gutmann and the law firm McCullough, Felger, Fite & Gutmann Co., L.P.A., on his claim of legal malpractice. We conclude that the malpractice claim is not yet ripe, and alternatively that appellant has failed to create a genuine issue of material fact that the attorney's actions caused him any damages, so we affirm.
I. Facts and Procedural History
{¶ 2} In 2008, Bogart met Bernard Kasten, who was an owner and a board member of Monroeville Industrial Moldings (MIM) and also a company called PIPO. MIM made plastic products, primarily spacer blocks for highway guardrails, and PIPO was a supply company that made plastic crumbles (ground up plastic), which MIM purchased and used to make its products. Kasten hired Bogart as an independent contractor to build special machines for MIM and to provide engineering services. Bogart was paid a weekly retainer to be available to fix manufacturing problems and paid an hourly rate for the time he spent actually working on problems. Several years later, Bogart began performing sales work for MIM. In March 2012, he and Kasten agreed that he would be paid sales commissions for opening new accounts and servicing existing accounts. Bogart's expenses were also paid, and he was given a company car to use.
{¶ 3} Later in 2012, a dispute arose about payment, and Bogart began looking for an attorney. In November, Bogart met with Gutmann and told him about three categories of claims: (1) payment of the weekly retainer and expenses, (2) payment of the hourly rate for engineering services, and (3) payment of sales commissions. According *713 to Gutmann, Bogart's focus at their initial meeting was on the retainer and the engineering services. Bogart did not bring up the issue of unpaid sales commissions until months later, when Bogart told Gutmann that he had a separate agreement regarding sales commissions. Gutmann agreed to represent Bogart in an action against MIM for certain breaches of contract but declined to represent him on a claim for unpaid sales commissions. Gutmann did not think that the commission claim was strong enough, and Bogart did not provide supporting documentation. Gutmann explained his limited representation to Bogart in a letter. Bogart understood the limited scope of Gutmann's representation and he later told Gutmann that another attorney was handling the commissions claim.
{¶ 4} On February 1, 2013, Kasten terminated Bogart's employment with MIM. And on April 4, 2013, Gutmann filed a complaint against MIM, PIPO, and Kasten asserting claims for failure to pay a finder's fee for acquiring a rubber tire processing line, failure to pay the weekly retainer, failure to pay the hourly rate for engineering services, failure to pay a finder's fee for Bogart's efforts in acquiring tractors and trailers, and promissory estoppel. In response, MIM asserted counterclaims against Bogart for breach of contract, conversion, misappropriation of funds, and misappropriation of trade secrets.
{¶ 5} The parties eventually agreed to settle the case, and an agreed settlement entry was filed in February 2014. Under the agreement, Bogart received the company car and rights to develop a particular project, and MIM agreed to pay Bogart $14,541 over a six-month period. The monetary part of the settlement was separately reduced to a judgment entry. Bogart was only able to collect $6,000 from MIM before the company ran out of money and stopped paying him. Kasten testified that MIM and PIPO lost a combined $1,462,000 in 2014 and that the companies ceased operations in August 2015. The business assets of both companies were taken by secured creditors and sold. Currently, Bogart's judgment against MIM, including interest, stands at around $11,165. Bogart has retained an attorney to collect the rest of that judgment but has not been successful. MIM has many other creditors that have not been paid.
{¶ 6} In February 2015, Bogart met with an attorney about bringing the claim for unpaid sales commissions. By then, MIM had not made any scheduled payments on the judgment for six months. The attorney told him that the commissions claim should have been brought in the first action and could not be brought now, because it was barred by res judicata. "[Y]our only recourse," the attorney told Bogart, "is to get compensation through your attorney [Gutmann]." (Bogart Dep. 87).
{¶ 7} Rather than filing an action for commissions, Bogart filed an action for legal malpractice against Gutmann. That case was voluntarily dismissed pursuant to Civ. R. 41(A)(1) and then refiled in November 2016. The complaint alleges that Gutmann's actions made it so that Bogart cannot bring the commissions claim. Bogart asserts that the commissions claim is barred by the previous settlement agreement and by res judicata. Gutmann moved for summary judgment, arguing that neither the settlement agreement nor res judicata bars the commissions claim. He also argued that Bogart's malpractice claim is not ripe, because the commissions claim remains a viable cause of action. Gutmann lastly argued that Bogart cannot prove malpractice damages, because given that MIM is insolvent he would not have been *714 able to recover on a judgment for unpaid sales commissions. The trial court sustained Gutmann's summary judgment motion, agreeing that neither the settlement agreement nor res judicata bars the commissions claim. The court agreed also that the malpractice claim is not ripe.
{¶ 8} Bogart appealed.
II. Analysis
{¶ 9} Bogart's three assignments of error challenge all three of the trial court's conclusions:
THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY FINDING THAT THE SETTLEMENT AGREEMENT IN THE UNDERLYING BREACH OF CONTRACT CASE WOULD NOT BAR PLAINTIFF-APPELLANT'S COMMISSIONS CLAIM.
THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS WITH REGARD TO THE ISSUE OF RES JUDICATA.
THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS WITH REGARD TO THE ISSUE OF RIPENESS.
{¶ 10} Summary judgment is proper under Civ.R. 56(C) if the moving party shows "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co., Inc. , 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).
{¶ 11} Bogart argues in the first assignment of error that the settlement agreement entered in the underlying action bars him from bringing the sales-commissions claim. He points to the first sentence of the agreement, which states: "The parties to this case have reached an agreement settling all claims of each of the parties hereto and wish to incorporate that agreement into this entry as follows." (Emphasis added.) But the following sentence is found near the end of the agreement: "This agreement represents a dismissal, with prejudice, of any and all claims filed herein by all parties hereto." (Emphasis added.) These two sentences suggest different intentions. The first suggests that the agreement encompasses all claims that the parties might have against each other, which would include Bogart's claim for unpaid sales commissions. But the second sentence narrows the covered claims to only those claims filed in the action, which the commission claim was not. Given these two statements, we believe that if this issue were presented to a court in a claim by Bogart against MIM that the trial court would reasonably conclude the settlement agreement is ambiguous as to whether it covers the commissions claim and therefore the settlement agreement would not bar the commissions claim.
{¶ 12} Bogart argues in the second assignment of error that he is also barred from bringing the sales-commission claim by res judicata. "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. , 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. A "transaction" is a "common nucleus of *715 operative facts." Id. at 383, 653 N.E.2d 226. "A settlement agreement between parties operates as res judicata to the same extent as an adjudication on the merits." MCM Funding 1997-1, Inc. v. Amware Distrib. Warehouses M & M, L.L.C. , 8th Dist. Cuyahoga No. 87041, 2006-Ohio-3326, 2006 WL 1780657, ¶ 35. See also Jammal v. American Family Ins. Grp. , N.D.Ohio Case No. 1:13 CV 437, 2015 WL 1810304 (Apr. 21, 2015) ("Ohio law holds that a settlement agreement between parties resulting in a dismissal with prejudice operates as res judicata to the same extent as an adjudication on the merits.").
{¶ 13} Res judicata is the reason that Civ.R. 13 bars a compulsory counterclaim from being brought later. Geauga Truck & Implement Co. v. Juskiewicz , 9 Ohio St.3d 12, 14, 457 N.E.2d 827 (1984). Civ.R. 13(A) makes compulsory all counterclaims "aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Under the logical-relation test, "multiple claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.' " Rettig Enterprises, Inc. v. Koehler , 68 Ohio St.3d 274, 278, 626 N.E.2d 99 (1994), quoting Great Lakes Rubber Corp. v. Herbert Cooper Co. , 286 F.2d 631, 634 (3d Cir. 1961). " Civ.R. 13(A) requires all existing claims between opposing parties that arise out of the same transaction or occurrence to be litigated in a single lawsuit, regardless of which party initiates the lawsuit." Id. "It makes no difference to the application of Civ.R. 13(A) that the opposing claim in the earlier action was a counterclaim rather than a complaint * * *." Id. at 277, 626 N.E.2d 99.
{¶ 14} Here, sales commissions were not mentioned in Bogart's complaint against MIM and an argument could be made that based on the complaint alone, res judicata does not bar the unpled commissions claim. But MIM's counterclaim makes allegations related to the time when Bogart was being paid sales commissions. In the second of the counterclaims, MIM alleges:
6. In connection with Plaintiff's engagement by Monroeville as an independent contractor, Plaintiff was afforded the use of a company debit and credit card and company car.
7. Plaintiff was permitted to use these items in furtherance of the objectives of Monroeville, but instead engaged in numerous personal expenditures and use of the company car on personal trips.
8. Monroeville, by and through Defendant Kasten, communicated with Plaintiff on this subject by a letter dated February 1, 2013, a true and accurate copy of which is attached hereto as Exhibit A.
9. Plaintiff's misuse of these benefits was wrongful, and Monroeville has been damaged in an amount to be determined at trial by Plaintiff's misconduct.
The referenced letter informs Bogart that his employment is being terminated. The letter talks about the compensation arrangement, including that Bogart received a set amount of money each week, was allowed to use a company car, and was reimbursed for work-related expenses.
{¶ 15} Plainly, the sales-commissions claim existed at the time of the underlying action. And in our view the commissions claim arises out of the transaction, the employment compensation relationship, on which the counterclaim is based. The commissions claim involves many of the same factual issues and is basically an offshoot of the same basic controversy between the parties. Therefore, regardless of whether Bogart was required to bring the claim for *716 sales commissions in the original complaint of the litigation against MIM, in light of the counterclaim, the commissions claim is a compulsory response and all of the compensation claims between the parties were required to be joined. If a trial court were to consider this issue in a claim by Bogart against MIM, in our opinion that trial court would reasonably conclude the commissions claim was barred by res judicata because of Civ.R. 13(A), ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). To that extent, we disagree with the trial court's conclusion that res judicata does not bar the commissions claim. Nonetheless, we perceive that conclusion to be premature as discussed below.
{¶ 16} We agree with the trial court and disagree with Bogart's argument in the third assignment of error that his legal malpractice claim is ripe for review. For this reason we have not definitively determined whether the commissions claim is barred by either the settlement agreement or by res judicata, because a determination of either issue in this case would not control in an action on the commission-claim. MIM is not a party to this case and the manner to determine whether the settlement or res judicata support Bogart's contention that Gutmann failed to preserve the commission claim is to bring the commission-claim action.
{¶ 17} "In order to be justiciable, a controversy must be ripe for review." Keller v. Columbus , 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 26. Ripeness is an issue of timing: " 'the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff.' " State ex rel. Elyria Foundry Co. v. Indus. Comm. , 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1998), quoting Comment, Mootness and Ripeness: The Postman Always Rings Twice , 65 Colum.L.Rev. 867, 876 (1965). " 'A claim is not ripe for our consideration if it rests on contingent future events that may not occur as anticipated or may never occur at all.' " U.S. Bank, N.A. v. 2900 Presidential Drive, L.L.C. , 2d Dist. Greene No. 2013 CA 60, 2014-Ohio-1121, 2014 WL 1339643, ¶ 32, quoting State v. Loving , 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 4 (10th Dist.), citing Texas v. United States , 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).
{¶ 18} Here, we simply do not know what would happen in an action for the unpaid commissions. MIM, apparently now defunct, may not respond to the complaint, handing Bogart a default judgment. If there is a response, it could fail to assert res judicata as an affirmative defense, waiving the defense. In the end, Bogart's speculation that, in a new action a court would conclude that his commissions claim is barred by both the settlement agreement and res judicata is insufficient to demonstrate a present, justiciable controversy. Accordingly we agree that the malpractice claim is premature and that on this record Bogart cannot prove the case within the case that he was deprived of his commissions claim by the actions of his attorney Gutmann. The third assignment of error is overruled.
{¶ 19} Alternatively, even if the issue were ripe, we believe that summary judgment is proper on Bogart's legal malpractice claim because he fails to show a genuine issue that he has suffered damages. "To establish a cause of action for legal malpractice, a plaintiff must show 'the existence of an attorney-client relationship giving rise to a duty, a breach of *717 that duty, and damages proximately caused by that breach.' " Ratonel v. Roetzel & Andress, L.P.A. , 147 Ohio St.3d 485, 2016-Ohio-8013, 67 N.E.3d 775, ¶ 6, quoting New Destiny Treatment Ctr., Inc. v. Wheeler , 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 25. Gutmann argues in his motion for summary judgment that even if he did negligently represent Bogart, Bogart suffered no damages as a result because Bogart would not have been able to collect on a judgment for unpaid sales commissions. Although the trial court made reference to this issue in its decision it did not rule on it. But, we review summary judgment de novo. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "An appellate court can decide an issue on grounds different from those determined by the trial court, so long as the evidentiary basis upon which the appellate court relies was addressed before the trial court and is a matter of record." Wodrich v. Federal Ins. Co. , 2d Dist. Greene No. 02CA3, 2002-Ohio-5122, 2002 WL 31151603, ¶ 19, citing State v. Peagler , 76 Ohio St.3d 496, 668 N.E.2d 489 (1996).
{¶ 20} "[C]ollectibility is an element of the plaintiff's case that must be proved by the plaintiff." Paterek v. Petersen & Ibold , 118 Ohio St.3d 503, 2008-Ohio-2790, 890 N.E.2d 316, ¶ 39. "The finest attorneys in the world cannot coax blood from a stone." Id. at ¶ 31. Which is why "[i]n proving what was lost, the plaintiff must show what would have been gained." Id. at ¶ 37. The plaintiff in a legal malpractice case "must prove a causal connection between the attorney's malpractice and their damages." Id. at ¶ 39. Here, Gutmann's expert, Thomas Whelley, opined that "[a]ssuming the Companies are out of business, have no assets or substantial judgment debtors with priority are in a superior position to plaintiff's claim, he has suffered no damages."[1] The evidence supports this opinion. Bogart has been able to collect only $6,000 of the settlement agreement with MIM. And no evidence suggests that he will be able to collect the rest. According to Kasten, MIM ran out of money in 2014, before it was able to pay the settlement judgment, and in August 2015 it ceased operating. All the company's assets were taken by secured creditors and sold. Bogart is not the only creditor waiting for payment. According to Kasten, MIM has many outstanding liabilities, like $80,000 in taxes, $180,000 owed to one company, and numerous other judgments against it.
{¶ 21} Bogart did not provide evidence of an opinion on damages contrary to that of Gutmann's expert. Instead, Bogart responded in his opposition to summary judgment that MIM was not insolvent in February 2014 when the settlement agreement was entered. He says that it was not until much later that MIM was liquidated. The company was liquid in 2014, says Bogart, and its assets would have been available for him to collect. His argument ignores the fact that to this day he has never filed suit on the commission claim and when he met with an attorney to pursue the commissions claim in February 2015, MIM had not paid on the settlement judgment for six months and was already insolvent and there was no chance of collection on the commission claim regardless of viability. There is no evidence to show that Gutmann proximately caused Bogart's claimed damages.
*718 {¶ 22} The evidence in the record suggests that Bogart could not collect a judgment for unpaid sales commissions and Bogart has not presented evidence to the contrary. We conclude the commissions claim is uncollectable and there is no genuine issue as to whether Gutmann proximately caused the damages that Bogart claims he suffered. Consequently summary judgment on Bogart's legal malpractice claim is appropriate for that reason also.
III. Conclusion
{¶ 23} The three assignments of error presented are overruled. The trial court's judgment is therefore affirmed.
FROELICH, J., and TUCKER, J., concur.

Whelley's opinions are attached to Gutmann's responses to Bogart's interrogatories, specifically, an interrogatory asking Gutmann to state the opinions to which Whelley would testify at trial. The responses and opinions are attached to an authenticating affidavit attached to Gutmann's motion for summary judgment.