[Cite as *State v. Fisk*, 2023-Ohio-1228.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee/Cross-Appellant | : | C.A. No. 28798 |
| | : | |
| v. | : | Trial Court Case No. 19-CR-2718 |
| | : | |
| ZACARY L. FISK | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant/Cross-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 14, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

STEPHEN P. HARDWICK, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} On remand from the Ohio Supreme Court, we address Cross-Appellant the State of Ohio's argument that the Montgomery County Court of Common Pleas erred in denying the restitution request of Steven Patton, the victim of a crime committed by

Zacary L. Fisk. For the reasons that follow, we reverse the judgment of the trial court and remand for a restitution hearing.

## I. Facts and Procedural History

{¶ 2} On August 15, 2019, Fisk lured Patton (who was Fisk's mother's fiancé) into the garage of their home and then attacked him with a hammer, knife, and scissors. After a lengthy struggle, Patton was able to escape, but not before suffering major injuries including stab wounds to his face, neck, chest, and belly. His injuries required surgeries and a week-long hospital stay and caused him to incur medical bills totaling more than $177,000.

{¶ 3} A short time later, Fisk was indicted on one count of attempted murder and two counts of felonious assault. After a two-day trial, the jury found Fisk guilty of both counts of felonious assault but not guilty of attempted murder. The court ordered a presentence investigation report and set a sentencing date. Both parties filed sentencing memoranda.

{¶ 4} At the disposition, the trial court asserted that it had considered the sentencing memoranda from both parties, letters in support of Fisk, Patton's victim impact letter, and medicals bills presented by Patton. Patton also gave a lengthy victim impact statement during the hearing which outlined the physical and emotional trauma caused by the attack, threats he had received from Fisk's side of the family, and the $177,178.58 in medical bills that, he claimed, the Veterans Administration would not pay.

{¶ 5} Citing Fisk's lack of an adult criminal record and support from his family, the trial court sentenced him to an indefinite prison term of two to three years on the merged

felonious assault counts. Further, the court rejected Patton's $177,179.58 restitution request, stating, "I need something more from the Veterans Administration relative to the potential coverage, noncoverage, the reason that coverage of any kind was declined." Trial Tr. at 846-847. It then advised Patton to consider a civil suit against Fisk or applying to the Ohio Crime Victims Compensation Fund.

{¶ 6} The State objected to the denial of restitution, arguing that the medical bills provided by Patton showing the cost of his medical treatment should have been sufficient to grant restitution. The State further argued that it was unnecessary to provide the court with a reason Patton's VA insurance declined coverage; it reasoned that it should be enough that it did deny coverage.

{¶ 7} In May 2020, Fisk appealed from his conviction, and the State cross-appealed, challenging the trial court's refusal to order restitution. Our decision, released June 11, 2021, overruled both parties' assignments of error and affirmed the judgment of the trial court. *State v. Fisk*, 2d Dist. Montgomery No. 28798, 2021-Ohio-1973 (*Fisk I*). As pertinent to this opinion, we reasoned that according to our interpretation of the text of Marsy's Law (Ohio Constitution, Article I, Section 10a(B)), the State lacked standing to appeal the denial of Patton's restitution. *Id.* at ¶ 35-46. Accordingly, we did not address the merits of the State's argument on Patton's behalf.

{¶ 8} The State appealed to the Ohio Supreme Court, and Fisk filed a cross-appeal. While the Court declined jurisdiction on Fisk's cross-appeal, it accepted jurisdiction on the State's proposition of law: "Ohio Constitution, Article I, Section 10(a), gives standing to the State of Ohio, through the prosecuting attorney who tried the

defendant's criminal case, to challenge on appeal the trial court's decision not to order restitution as part of a defendant's sentence." Case No. 2021-1047. After considering the briefs and oral arguments, the Ohio Supreme Court reversed the judgment of this Court and remanded the case so that we could address the merits of the State's original cross-appeal in *Fisk I. State v. Fisk*, Ohio Slip Opinion No. 2022-Ohio-4435, __ N.E.3d __, ¶ 18 (*Fisk II*).

## II.     Restitution

{¶ 9} The State argues that the "trial court erred in not ordering Fisk to pay restitution for the un-reimbursed medical expenses that Steven Patton incurred as a result of Fisk's felonious assault." Appellee's Brief at 10.

{¶ 10} R.C. 2929.18(A)(1) permits a trial court to order restitution "by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." If restitution is imposed, the statute states that it may be made "to the victim in open court, to the adult probation department * * *, to the clerk of courts, or to an agency designated by the court." *Id.* The cause of restitution for victims has been furthered by constitutional amendment. In February 2018, Marsy's Law, an amendment to the Ohio Constitution, Article I, Section 10a, gave victims the right to "full and timely restitution from the person who committed the criminal offense or delinquent act." Ohio Constitution, Article I, Section 10a(A)(7). We review the trial court's restitution decision under an abuse of discretion standard. *State v. Jacobs*, 2018-Ohio-671, 106 N.E.3d 897, ¶ 4 (2d Dist.).

{¶ 11} There is no doubt Patton presented evidence that he had incurred huge medical bills. Even before the sentencing hearing, when he was cooperating with the

presentence investigation, Patton revealed to court officials that he had had "approximately $178,000 in total loss" and that the attack had "unimaginable emotional and financial impact." The official who wrote the PSI recommended a restitution hearing. Patton then testified at sentencing that he had medical bills totaling $177,179.58. The court even acknowledged that it had "received * * * a number of copies of bills from Kettering Hospital which exceed $177,000 for treatment that occurred to Mr. Patton from the injuries suffered at the hands of Mr. Fisk." Trial Tr. at 846. The issue for the court, however, was that Patton claimed his insurance, which he received through the Veterans Administration (VA), would not cover the bills due to the nature of the injuries. The court stated the following:

> Importantly though, in my consideration of deciding an appropriate restitution amount, I do not have any documentation from the Veterans Administration as to the issue of declination of coverage, whether that declination is appropriate, inappropriate. And I'm not doubting what Mr. Patton told me. Please understand that, sir. I'm not questioning that you have not provided me with everything that you understand regarding coverage from the Veterans Administration. But in order to justify in my position that kind of restitution that you're describing with the billing that's been submitted, I need something more from the Veterans Administration relative to potential coverage, noncoverage, the reason that coverage of any kind was declined.

Trial Tr. at 846-847. The trial court then denied restitution and advised Patton to consider

the Ohio Crime Victims Compensation Fund (which has a cap of $50,000.00) or a civil action against Fisk.

{¶ 12} The trial court's concern about whether insurance would cover Patton's medical bills was reasonable. R.C. 2929.18(A)(1) grants the sentencing court discretion to order restitution, but not in an amount greater than the economic loss suffered by the victim. *State v. Donaldson*, 2d Dist. Montgomery No. 29473, 2023-Ohio-234, ¶ 51. Granting restitution if the bills were covered by insurance would result in a double recovery and would amount to an economic windfall for the victim.

{¶ 13} While it was reasonable for the trial court to be concerned about having proof that the VA had declined to cover Patton's medical bills, it was unreasonable, and an abuse of discretion, to immediately deny restitution altogether. "Where evidence of the appropriate amount of restitution does not appear in the record, an evidentiary hearing is required." *State v. Preztak*, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 34 (8th Dist.). Moreover, R.C. 2929.18(A) provides that when the restitution amount is disputed, the court "shall hold a hearing on [the appropriate amount of] restitution * * *." In our view, the restitution discussion that occurred at Fisk's sentencing hearing did not constitute the hearing required by R.C. 2929.18(A). And, under R.C. 2953.08(B)(2), the State may appeal a sentence that is "contrary to law." The trial court's failure to conduct the mandated restitution hearing made Fisk's sentence contrary to law.

{¶ 14} We conclude, therefore, that the proper action for the court would have been to grant Patton an opportunity to provide the necessary paperwork to demonstrate that his insurance had declined to cover his hospital bills. This short delay would not have

prejudiced Fisk (he had already been found guilty of serious felonies and was in jail), and it might have eased the trial court's concern about the VA's insurance coverage. A restitution hearing is even more important now, three years later. In the time since Patton's request was denied, the VA could have decided to cover the bills, Patton could have received compensation from the Ohio Crime Victims Compensation Fund, or he might have obtained a civil judgment against Fisk. Thus, to determine the appropriate amount of restitution, a hearing is required. The State's assignment of error is sustained.

{¶ 15} Fisk asserts that because Patton, through the prosecuting attorney or otherwise, did not assert to the trial court that he was constitutionally entitled to restitution, any constitutional claim to restitution has been forfeited. This assertion is without merit.

{¶ 16} When Fisk was sentenced, Article I, Section 10a(B) was in place. Thus, Patton, by seeking restitution, was entitled to the Article I, Section 10a(B) constitutional protections provided to a crime victim. He did not need to specifically assert or otherwise reference the constitutional provision to be entitled to such protection.

{¶ 17} We finally note that Fisk's assertion that the fact-finding that Article I, Section 10a(B) requires a trial court to perform violates Fisk's right, under the Sixth and Fourteenth Amendments to the United States Constitution, to have any matter that "increases the penalty for a crime beyond the prescribed statutory maximum * * * submitted to a jury, and proved beyond a reasonable doubt * * * " is premature. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This is so because at this point it is unknown what, if any, restitution the trial court will order. " 'A claim is not ripe for [appellate] consideration if it rests on contingent future events that

may never occur at all.' " *Bogart v. Gutman*, 2018-Ohio-2331, 115 N.E.3d 711, ¶ 17 (2d Dist.), quoting *U.S. Bank v. 2900 Presidential Drive, LLC*, 2d Dist. Greene No. 2013-CA-60, 2014-Ohio-1121, ¶ 32, quoting *State v. Loving*, 180 Ohio App. 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 4 (10th Dist.), citing *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

### III.    Conclusion

**{¶ 18}** Having found that the trial court erred by immediately denying Patton's restitution request, the judgment of the trial court as to the imposition of restitution is reversed, and the matter is remanded for the limited purpose of holding a restitution hearing to determine the appropriate amount of restitution, if any. The judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.