[Cite as *New Destiny Treatment Ctr., Inc. v. Wheeler,* 129 Ohio St.3d 39, 2011-Ohio-2266.]

NEW DESTINY TREATMENT CENTER, INC., ET AL., APPELLEES, *v.* WHEELER
ET AL., APPELLANTS.

[Cite as *New Destiny Treatment Ctr., Inc. v. Wheeler,*
129 Ohio St.3d 39, 2011-Ohio-2266.]

*Legal-malpractice claim — Attorney-client relationship — Party hiring counsel
on behalf of a corporation must have authority to do so.*

(No. 2010-0298 — Submitted February 15, 2011 — Decided May 18, 2011.)

APPEAL from the Court of Appeals for Summit County,

No. 24404, 2009-Ohio-6956.

_____

**O'DONNELL, J.**

{¶ 1} Attorney E. Marie Wheeler and the law firm of Roderick Linton, L.L.P., appeal from a decision of the Ninth District Court of Appeals reversing a grant of summary judgment entered in their favor in a legal malpractice action brought against them by New Destiny Treatment Center, Inc., and Christian Brotherhood Newsletter, both nonprofit corporations and successors to the Barberton Rescue Mission, Inc. The malpractice case arose from the representation of a dissident member of the board of trustees who tried to regain control of the corporation. The issue that concerns us in this case is whether attorneys who were retained by a dissident member of a nonprofit corporation's board of trustees, and who assisted the dissident in temporarily taking control of the corporation, may subsequently be sued by the corporation for malpractice. The answer is no, because no attorney-client relationship existed between the attorney and the corporation.

{¶ 2} Here, Wheeler and the law firm of Roderick Linton represented only the dissident trustee and took action on behalf of the corporation as

instructed by the dissident. No attorney-client relationship ever existed between the corporation and the attorney or the law firm. Therefore, there is no basis for the corporation to maintain a cause of action for legal malpractice against either. Accordingly, we reverse the judgment of the court of appeals and reinstate the grant of summary judgment entered in favor of Wheeler and the law firm of Roderick Linton.

**Facts and Procedural History**

{¶ 3} New Destiny Treatment Center, Inc., is a nonprofit corporation located in Barberton, Ohio. New Destiny and the Christian Brotherhood Newsletter were originally organized as a single nonprofit corporation known as the Barberton Rescue Mission, Inc., which operated a rehabilitation facility for people with substance-abuse problems and provided a mutual aid program to assist those who subscribed to its Christian newsletter in paying their uninsured medical expenses.

{¶ 4} In the late 1990s, the Internal Revenue Service, the Ohio attorney general, and the Summit County prosecuting attorney began investigating whether Reverend Bruce Hawthorn, the founder and president of the Mission, had abused the Mission's tax-exempt status by diverting funds designated for a charitable purpose to his personal use and the use of friends and relatives.

{¶ 5} Once he became aware of these investigations, Hawthorn invited Reverend Howard Russell and Reverend Richard Lupton to join the Mission's board of trustees in 1999 to make it appear that the Mission had an independent, rather than a family, board. Russell became chairman and Lupton became secretary of the board, and they discovered that the Mission had fallen as much as $35 to $40 million behind in paying its subscriber's medical bills, even though the newsletter generated $3 to $4 million per month in charitable contributions. The board retained the law firm of Vorys, Sater, Seymour & Pease, L.L.P., as legal

counsel in response to the investigations of the Mission's tax-exempt status and of Hawthorn's alleged misuse of charitable funds.

{¶ 6} When a majority of the members of the board of trustees became concerned that Hawthorn's leadership threatened the continued existence of the ministry, the board placed Hawthorn on a six-month leave of absence from his position controlling the daily activities of the ministry. It appointed Dan Beers, Hawthorn's nephew, as executive director of the Mission and assigned Hawthorn's duties to him; the minutes of a board meeting reflect that Beers resigned his position as a member of the board of trustees when he became executive director. The board eventually replaced Beers with an interim CEO and a management team.

{¶ 7} When Hawthorn began to reassert control over the Mission, members of the board of trustees determined that the best interests of the organization required his removal as president. While divided on this issue, the board in November 2000 extended Hawthorn's leave of absence indefinitely, and Russell and Lupton, at least, believed that this leave relieved him of all executive authority.

{¶ 8} Russell scheduled a meeting of the board of trustees for December 4, 2000, to discuss the attorney general's investigation, to remove Hawthorn and his brother-in-law, Ron Beers, from the board, and to force Hawthorn to retire.

{¶ 9} Hawthorn then retained Wheeler and the law firm of Roderick Linton to ensure that he retained control of the board. He scheduled a board meeting on December 4, earlier in the day than the one scheduled by the board. Wheeler prepared a special meeting agenda for the earlier meeting that included removing Russell from the board and retaining Roderick Linton as counsel for the Mission. Because neither faction could assemble a quorum, neither succeeded in removing the other from the board.

**{¶ 10}** On December 6, 2000, Hawthorn changed the locks on the Mission's building, fired the board-appointed management team, and announced to employees that he had control of the organization. When Russell, who had been informed of Hawthorn's actions, arrived at the building, Hawthorn purported to remove him from the board, and Wheeler ordered Russell to leave the premises.

**{¶ 11}** Hawthorn then scheduled a teleconference meeting of the board for December 11, 2000. Although Russell and Lupton were both given notice of the meeting and planned at that time to seek removal of Hawthorn and Ron Beers from the board, neither was permitted to participate.

**{¶ 12}** At the meeting, Hawthorn and the board members present claimed that Dan Beers had not resigned from the board but rather had returned from a leave of absence as a trustee, found that a quorum existed, and thus purported to remove Russell and Lupton from the board and elect a new slate of trustees more favorable to Hawthorn. Hawthorn also informed the board that he had retained Wheeler on behalf of the Mission.

**{¶ 13}** That same day, the attorney general, Russell, and Lupton brought an action in the name of the Mission against Hawthorn and others to recover funds misappropriated from the organization. Wheeler filed a notice to voluntarily dismiss the action on behalf of the Mission. Importantly, the attorney general, Russell, and Lupton moved to strike the notice and asserted that Wheeler and another Roderick Linton attorney represented only Hawthorn and the other defendants, but were "*not* attorneys for Plaintiff Barberton Rescue Mission, Inc., nor [was] there any way they conceivably could be." (Emphasis sic.)

**{¶ 14}** On December 22, 2000, the attorney general, Russell, and Lupton filed a separate action on behalf of the Mission in the Ninth District Court of Appeals seeking a writ of quo warranto to restore Russell and Lupton as members

4

of the Mission's board of trustees. They alleged that Hawthorn had usurped control over the Mission and operated it without corporate authority to do so.

{¶ 15} Wheeler subsequently ended her association with Roderick Linton in February 2001, and in April 2001, the common pleas court appointed R. Scott Haley as operating receiver for the Mission. Although neither Russell nor Lupton acknowledged Wheeler's authority to represent the Mission, Haley formally terminated her as counsel for the Mission. She continued to represent Hawthorn in the court matter, however, until she withdrew in August 2001. The common pleas court litigation proceeded with new defense counsel and resulted in a $2,950,000 jury verdict against Hawthorn.

{¶ 16} On October 3, 2001, the court of appeals entered a summary judgment in the quo warranto action in favor of the attorney general, finding that Dan Beers had not taken a leave of absence from the board of trustees but had resigned from that position. The court therefore determined that the December 11, 2000 meeting, during which Hawthorn had attempted to oust Russell and Lupton from the board of trustees, was invalid for lack of a quorum, and it further held that "[b]ecause the meeting was invalid, any and all actions taken at that meeting [were] void." *State ex rel. Montgomery v. Hawthorn* (Oct. 3, 2001), Summit App. No. 20391, 2001 WL 1169559.

{¶ 17} New Destiny then filed this legal malpractice action against Wheeler and Roderick Linton, asserting that they had breached their obligations as attorneys and had negligently represented that a quorum had been present at the December 11, 2001 meeting, which allowed Russell and Lupton to be removed from the board and left Hawthorn in control of the Mission.

{¶ 18} The trial court entered summary judgment in favor of Wheeler and Roderick Linton, concluding that no genuine issue of material fact existed regarding whether the attorneys had entered into an attorney-client relationship with the Mission. As the court explained, "[t]he facts of this case do not provide

for a legal malpractice cause of action because there was never an attorney-client relationship between Defendants and Plaintiffs.  In fact, the opposite is true: the current parties had an adversarial relationship * * *. The factions had separate interests, separate Boards, and separate attorneys."

{¶ 19} The court of appeals reversed the trial court on the issue of the existence of an attorney-client relationship, explaining that because a corporation is an entity separate from its constituents, testimony from Russell and Lupton that Wheeler did not represent the Mission is not conclusive.  The appellate court determined that the fact that Hawthorn hired Wheeler in his capacity as president of the Mission established a genuine issue of material fact regarding the existence of an attorney-client relationship.  The appellate court rejected the argument that New Destiny should be judicially estopped from asserting the existence of an attorney-client relationship, holding that Wheeler and Roderick Linton had unclean hands, having "represented themselves as attorneys for the Mission," and thus could not assert the defense of judicial estoppel.  *New Destiny Treatment Ctrs., Inc. v. Wheeler*, 9th Dist. No. 24404, 2009-Ohio-6956, at ¶ 29.

### Arguments on Appeal

{¶ 20} Wheeler and Roderick Linton assert that they were not the attorneys for the Mission but rather that they represented one faction seeking to control the Mission's board.  They note that the lawfully constituted board of trustees never considered Wheeler to be the attorney for the board or for the Mission and that Hawthorn's leave of absence deprived him of both actual and apparent authority to engage an attorney on the Mission's behalf.  Wheeler and Roderick Linton also contend that the Mission should be judicially estopped from asserting that an attorney-client relationship existed because it had successfully argued a contrary position in prior litigation.

{¶ 21} Finally, they argue that a court of appeals may not reverse a trial court's judgment if alternative grounds for affirming it are preserved in the record and raised on appeal.

{¶ 22} New Destiny, on the other hand, maintains that Wheeler and Roderick Linton acted as the corporate counsel for six months, that Hawthorn controlled the corporation and held out Wheeler and Roderick Linton as representing the Mission during that time, and that its employees treated them as counsel. Also, New Destiny relies on the doctrine of equitable estoppel to bar Wheeler and Roderick Linton from denying that they had an attorney-client relationship with the corporation, asserting that the attorneys represented that they were attorneys for the Mission and that the Mission relied to its detriment on those representations by paying their attorney fees.

{¶ 23} Accordingly, the question presented is whether an attorney retained by a dissident member of a nonprofit corporation's board of trustees in an effort to gain control of the corporation may subsequently be sued for malpractice by the corporation.

## Standard of Review

{¶ 24} Our review of cases decided on summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. A trial court should enter summary judgment in favor of the moving party if " '(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.' " *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, quoting *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

## The Attorney-Client Relationship

**{¶ 25}** To establish a cause of action for legal malpractice, a claimant must demonstrate the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058. Accordingly, as we explained in *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, "[i]f a plaintiff fails to establish a genuine issue of material fact as to any of the elements, [the attorney] is entitled to summary judgment." Id. at ¶ 8.

**{¶ 26}** To determine whether an attorney-client relationship exists, the law looks to the manifest intentions of the attorney and the prospective client. 1 Hazard & Hodes, The Law of Lawyering (2005) 2-8, Section 2.5. A relationship of attorney and client arises when a person manifests an intention to obtain legal services from an attorney and the attorney either consents or fails to negate consent when the person has reasonably assumed that the relationship has been established. Id.; 1 Restatement of the Law 3d, The Law Governing Lawyers (2000) 126-128, Section 14. Thus, the existence of an attorney-client relationship does not depend on an express contract but may be implied based on the conduct of the parties and the reasonable expectations of the putative client. Hazard & Hodes, supra, at 2-9; Becker, Guttenburg & Snyder, The Law of Professional Conduct in Ohio (2009-2010) 1-15 to 1-16, Section 1.07[1]; Flamm, Lawyer Disqualification: Conflicts of Interest and Other Bases (2003) 221-222, Section 11.2; see also *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 10 ("The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client").

**{¶ 27}** However, in this case, the putative client is a corporate entity, and an attorney employed or retained by a corporation represents the organization acting through its constituents; the attorney does not owe allegiance to a

stockholder, director, officer, or other person connected with the corporation. Prof.Cond.R. 1.13(a); former EC 5-19. Thus, because a corporate attorney represents the organization acting through its agents, id., in order to form an attorney-client relationship with a corporation, the party hiring counsel on behalf of the corporation must necessarily have authority to do so and must reasonably believe that an attorney-client relationship has been established.

{¶ 28} Here, no one with authority to employ counsel for the Mission retained either Wheeler or the firm of Roderick Linton, and no corporate resolution exists to that effect. While Hawthorn purported to retain them in his capacity as president of the Mission in December 2000, the board of trustees had placed him on a leave of absence in May 2000 and had extended that leave of absence indefinitely in November 2000. Both Russell and Lupton testified that Hawthorn had been relieved of his authority to control the daily activities of the corporation during this period of time. Thus, Hawthorn lacked authority in his capacity as president to retain counsel on behalf of the Mission in December 2000.

{¶ 29} Further, New Destiny does not point to anything in this record showing that any other constituent of the Mission with authority to obtain counsel retained Wheeler, nor does it indicate that any board meeting took place at which the duly elected directors established a quorum and ratified Wheeler's employment or that of the law firm of Roderick Linton as the Mission's counsel. In fact, both Russell and Lupton testified that Wheeler did not represent the Mission as its attorney, because they considered her to be the attorney for Hawthorn and his faction.

{¶ 30} Moreover, the complaint filed by New Destiny in this case states that Wheeler and Roderick Linton never had authority to represent the Mission, alleging that Wheeler and the law firm provided advice to the Hawthorn faction of the board that "*purported* to result in her retention as counsel" (emphasis added)

for the Mission but that their employment was actually "void and invalid." New Destiny cites no legal principle that would allow it to deny the existence of an attorney-client relationship between the Mission and Wheeler or the law firm in its complaint while simultaneously seeking to recover a judgment against them for legal malpractice.

{¶ 31} Accordingly, New Destiny has not met its burden to establish the existence of an attorney-client relationship between the Mission and Wheeler or Roderick Linton, and no evidence of such a relationship exists. Thus, summary judgment is appropriate in connection with New Destiny's legal malpractice claims, and the question whether an appellate court may reverse a trial court's judgment if alternative grounds for affirming it are preserved in the record and raised on appeal therefore becomes moot.

### Conclusion

{¶ 32} A claimant may not maintain a cause of action for malpractice against an attorney in the absence of an attorney-client relationship. Because neither Wheeler nor Roderick Linton ever represented the Mission, but rather represented only a dissident faction of the corporation, the trial court properly entered summary judgment on the legal malpractice claim asserted against them. Accordingly, we reverse the judgment of the court of appeals and reinstate the summary judgment entered by the trial court in favor of Wheeler and Roderick Linton.

Judgment reversed.

PFEIFER, ACTING C.J., and ROGERS, LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

LANZINGER, J., concurs in judgment only.

RICHARD M. ROGERS, J., of the Third Appellate District, sitting for O'CONNOR, C.J.

_____

Gibson & Lowry, Michael J. Moran, and Kenneth L. Gibson, for appellee New Destiny Treatment Center, Inc.

Gallagher Sharp, Alan M. Petrov, Timothy J. Fitzgerald, Jay Clinton Rice, and Theresa A. Richthammer, for appellant Roderick Linton, L.L.P.

Reminger Co., L.P.A., Brian D. Sullivan, Martin T. Galvin, and John P. O'Neil, for appellant E. Marie Wheeler.

_____