[Cite as *Somasundaram v. Kent State Univ.*, 2014-Ohio-1029.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Harikrishnan Somasundaram, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-785 |
| v. | : | (Ct. of Cl. No. 2012-04197) |
| Kent State University, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 18, 2014

*Ashvin Chandra, LLC, LPA*, and *Ashvin Chandra*; *Jaye M. Schlachet*, for appellant.

*Michael DeWine*, Attorney General, and *Randall W. Knutti*, for appellee.

APPEAL from the Court of Claims of Ohio

O'GRADY, J.

{¶ 1} Plaintiff-appellant, Harikrishnan Somasundaram ("Somasundaram"), appeals the judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Kent State University ("KSU"). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In May 2012, Somasundaram filed a complaint against KSU alleging he was a citizen of India who "applied and got accepted at the professional pilot program at KSU." (R. 1, 2.) KSU issued an I-20, i.e., a Certificate of Eligibility for Nonimmigrant (F-1) Student Status, so he could apply for a visa. Premier Flight Academy, Ltd. ("Premier") was part of KSU's College of Technology Accelerated Professional Pilot Training Program

and acted at "all relevant times" on KSU's behalf. (R. 1, 1.) Once Somasundaram arrived in the United States, Premier gave him a contract and "told him that he had to sign it." (R. 1, 2.) Although he "was a minor at the time," he had "no choice but to sign the purported contract," so it was "void." (R. 1, 2.) Around March 11, 2009, Somasundaram was accused of misusing another student's credit card. The student did not press criminal charges, but Premier's representatives searched Somasundaram's room and suspended him from the pilot program without a hearing, causing his "immigration status to lapse." (R. 1, 3.) The objective of KSU and Premier was to keep his tuition "without providing any value for it." (R. 1, 3.) Somasundaram alleged claims against KSU for breach of contract, unjust enrichment, violation of the Consumer Sales Practices Act, and violation of his due process and Fourth Amendment rights.

{¶ 3} KSU filed a motion for summary judgment, which Somasundaram opposed. Collectively, the parties submitted three deposition transcripts as evidence. Somasundaram also submitted a copy of his I-20, which an employee at KSU's International Student and Scholar Service presumably filled out. The I-20 lists KSU as Somasundaram's school and mentions Premier's name under the section regarding his means of financial support.

{¶ 4} During his deposition, Somasundaram testified he entered into a contract with Premier and came to the United States in October 2008. The contract, which Somasundaram attached to the complaint, details the terms and conditions under which Premier agreed to provide him with flight training hours. Somasundaram testified that when he entered into the contract, he had no discussions with anyone from KSU and did not recall signing any documents with KSU. The only document he received from KSU was the I-20, which he claimed was "like acceptance from" KSU. (Somasundaram Depo. 10.) But he paid tuition and fees to Premier, not KSU. Premier suspended him in March 2009 because he had a dispute with a friend and used her credit card without permission as revenge. Somasundaram claimed he did not violate his contract because law enforcement never charged him in the incident. He also complained Premier suspended him without a hearing.

{¶ 5} Marc McKee, one of Premier's owners and its acting president, testified Premier was a flight training vocational school that provided licenses and certifications.

When Somasundaram started at Premier in 2008, Premier was affiliated with two colleges, including KSU. McKee testified that, typically, an international student would attend Premier with an M-1 visa. However, McKee testified Premier and KSU had an agreement under which Premier would provide flight training to Indian students through KSU's exchange program, possibly as part of a non-credit workshop in KSU's aeronautics division. KSU agreed to help Premier's students obtain F-1 visas. Premier agreed to pay KSU $1,500 per student. Premier paid KSU this fee for helping Somasundaram obtain an F-1 visa. According to McKee, Premier entered into this agreement with KSU because some of Premier's students wanted F-1 visas. McKee believed it was easier to transition to a different type of visa from an F-1 visa than an M-1 visa. According to McKee, the relationship between Premier and KSU ended in 2010 or 2011. Premier was never involved in KSU's own four-year flight training degree program.

{¶ 6} McKee testified Premier and Somasundaram had a contract. According to McKee, Somasundaram breached his contract with Premier by admittedly stealing and using the credit card of another student. Other students in Premier's program no longer felt comfortable living with him, and McKee believed Somasundaram had engaged in harassing behavior in violation of the contract. Also, while Somasundaram made all payments under the contract, he failed to make them on time. McKee also felt Somasundaram's performance as a student had been poor. Therefore, Premier terminated Somasundaram as a student.

{¶ 7} Mary Anne Saunders, a KSU administrator, testified she started to work at the school at the end of 2008. She thought KSU and Premier had a contract regarding flight training for students from India. Saunders believed Premier agreed to pay KSU $1,500 to apply for F-1 visas for Premier's students. Saunders believed the arrangement ended because KSU was "not being paid." (Saunders Depo. 16.)

{¶ 8} The Court of Claims granted KSU summary judgment. The court found Somasundaram failed to present a "contract with KSU or any evidence to establish that he had a contractual relationship with KSU." (R. 24, 2.) He also could not sue to enforce the contract between Premier and KSU as a third-party beneficiary. Regarding the unjust enrichment claim, Somasundaram failed to prove he conferred a benefit on KSU. The evidence showed he "paid Premier for flight instruction and * * * concede[d] KSU assisted

him in obtaining his visa for the fee that was paid by Premier for that purpose." (R. 24, 4.) The Court of Claims also rejected the Consumer Sales Practices Act and constitutional claims.

## II. ASSIGNMENT OF ERROR

{¶ 9} Somasundaram appeals and presents one assignment of error for our review:

> The Court of Claims of Ohio erred in granting summary judgment where there remained issues of fact. The Court of Claims should have held the existence of a contract between the parties and its consequent breach by appellee.

## III. DISCUSSION

{¶ 10} In his sole assignment of error, Somasundaram contends the Court of Claims erred when it granted KSU summary judgment. Specifically, he argues genuine issues of material fact exist as to his claims for breach of contract and unjust enrichment. Somasundaram does not challenge the Court of Claims' grant of summary judgment on his other claims, so we need not address them.

{¶ 11} Appellate review of summary judgment is de novo, which necessitates an independent review of the record without deference to the trial court's decision. *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, ¶ 24; *Miller v. J.B. Hunt Transport, Inc.*, 10th Dist. No. 13AP-162, 2013-Ohio-3892, ¶ 20. Under Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment "is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Brown v. Ohio Dept. of Rehab & Corr.*, 10th Dist. No. 12AP-891, 2013-Ohio-4207, ¶ 20, citing *Stevens v. Ohio*

*Dept. of Mental Health*, 10th Dist. No. 12AP-1015, 2013-Ohio-3014, ¶ 11, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

A. *Breach of Contract Claim*

{¶ 12} " ' "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." ' " *Coffman v. Ohio State Adult Parole Auth.*, 10th Dist. No. 12AP-267, 2013-Ohio-109, ¶ 9, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).

{¶ 13} Somasundaram states the following regarding his breach of contract claim:

> Appellee submitted to the [Department of Homeland Security] (through the I-20) that Appellant would be a student of Appellee. One can only infer that Premier, which signed the contract with Appellant, was a division of Appellee. By terminating Appellant without a hearing (which is required by Appellee's handbook), Premier breached the contract it had entered with Appellant.

(Appellant's brief, 12.)

{¶ 14} Though unclear, Somasundaram appears to contend the I-20 created a genuine issue of material fact about whether Premier executed the contract with him as an agent of KSU. Somasundaram failed to support this position with any legal authority, and it is not this court's duty to construct an appellant's arguments for him. *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34, quoting *Camp v. Star Leasing Co.*, 10th Dist. No. 11AP-977, 2012-Ohio-3650, ¶ 67. Additionally, while the I-20 suggests some connection between KSU and Premier, it provides no information about the capacity in which Premier executed the contract with Somasundaram. Other uncontroverted evidence demonstrates KSU's role in this matter was limited to processing Somasundaram's visa application in exchange for Premier's promise to pay KSU $1,500. Given the lack of evidence that Somasundaram and KSU had a contractual relationship,

no genuine issue of material fact exists and the Court of Claims correctly found KSU was entitled to judgment as a matter of law on the breach of contract claim.[1]

        B. *Unjust Enrichment Claim*

{¶ 15} " 'A plaintiff must establish the following three elements to prove unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.' " *Malempati v. Indep. Inpatient Physicians, Inc.*, 10th Dist. No. 12AP-565, 2013-Ohio-3543, ¶ 40, quoting *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 33.

{¶ 16} Regarding the unjust enrichment claim, the entirety of Somasundaram's argument on appeal is that KSU "was unjustly enriched by at least $1,500.00, the sum Premier paid [KSU] in order to process [his] visa documents." (Appellant's brief, 12.) Somasundaram again cites no case law to support his position and provides no analysis. *See Hubbard* at ¶ 34, quoting *Camp* at ¶ 67. As the Court of Claims pointed out, he failed to prove he conferred any benefit on KSU. Somasundaram paid tuition and fees to Premier, not KSU. If KSU received $1,500 for processing Somasundaram's visa application (which KSU denies), Premier paid the $1,500, not Somasundaram. Moreover, we fail to see how it would be unjust for KSU to retain this money because KSU did the job Premier paid it to do – it helped Somasundaram get his visa. KSU was not responsible for Somasundaram's subsequent suspension and any impact that suspension had on his visa. Therefore, the Court of Claims correctly found no genuine issue of material fact exists and KSU was entitled to judgment as a matter of law on the unjust enrichment claim.

## IV. CONCLUSION

{¶ 17} For the foregoing reasons, we overrule the sole assignment of error and affirm the judgment of the Court of Claims of Ohio.

                                                                *Judgment affirmed.*

                BROWN and DORRIAN, JJ., concur.

_____

[1] We note KSU argues Somasundaram was also not an intended third-party beneficiary of the contract between it and Premier. However, Somasundaram did not pursue this legal theory on appeal, so we do not address these arguments.