[Cite as *Meehan v. Smith*, 2022-Ohio-2359.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

MARCIA MEEHAN, TRUSTEE AND : 
BENEFICIARY, ET AL., :

      Plaintiffs-Appellants, :

                      No. 110976

      v. :

N. LINDSEY SMITH, ET AL., :

      Defendants-Appellees. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 7, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-916154

---

### *Appearances:*

Anelli Law, LLC, and Dianna M. Anelli, *for appellants*.

Coakley Lammert Co., LPA, and George S. Coakley, *for appellees*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Plaintiffs-appellants appeal from the trial court's decision granting summary judgment in favor of defendants-appellees N. Lindsey Smith and Todd Bartimole. After a thorough review of the law and facts, we determine that there are

no genuine issues of material fact and appellees are entitled to judgment as a matter of law.  We therefore affirm the trial court's judgment.

{¶ 2} The plaintiffs-appellants in this case are as follows:  (1) Marcia Meehan, Trustee and Beneficiary under the Thomas P. Meehan Trust and the Donna M. Meehan Trust dated December 16, 2010; (2) the Thomas P. Meehan Trust, Marcia Meehan, Trustee; (3) the Donna M. Meehan Trust, dated December 20, 2010, Marcia Meehan, Trustee; (4) Teepee & Petunia, LLC, Marcia Meehan, President and Manager; and (5) "Jane Doe, Executor of the Estate of Donna M. Meehan[,] Marcia Meehan, Plaintiff of a Will Contest."  For ease of discussion, we will use "appellant" as a reference to Marcia Meehan, representing all of the plaintiffs-appellants.

{¶ 3} The defendants-appellees are licensed Ohio attorneys.

**Factual and Procedural Background**

{¶ 4} Appellant is the daughter of Thomas and Donna Meehan.  Thomas and Donna have three other adult children:  Patrick Meehan, Timothy Meehan, and Michael Meehan.  There are several Meehan grandchildren.

{¶ 5} Thomas and Donna owned property that they referred to as "the farm" in Harrison County, Ohio.  In 2010, the couple entered into oil and gas and mineral rights leases on the property; the leases generated substantial income.  Around the same time that they entered into the leases, Thomas and Donna hired defendant-appellee N. Lindsey Smith, who was an attorney with the firm Smith and Condeni, for estate planning, asset protection, Medicaid planning, and business organization purposes.

{¶ 6} Smith, along with other attorneys at Smith and Condeni, prepared, among other estate planning documents, revocable living trusts and wills for Thomas and Donna. The attorneys also created Teepee & Petunia, an LLC, for the purpose of owning the farm and receiving the revenues from the leases. The documentation and invoices relative to the firm's work identified Thomas and Donna Meehan as the firm's clients.

{¶ 7} Under the trusts, Thomas and Donna were the donors and initial trustees of their respective trusts. Donna was named the successor trustee of Thomas's trust and appellant was named as the second successor trustee. Appellant was named as the successor trustee of Donna's 2010 trust. The trusts were reciprocal "A/B marital trusts" that distributed trust income and principal first to each spouse for life, and then, after their deaths, to their children and grandchildren.

{¶ 8} In regard to Teepee & Petunia, Thomas and Donna were each 50 percent members and appellant was the statutory agent, manager, and sole officer. In 2012, Teepee & Petunia received a substantial income distribution from the oil and gas leases. Thereafter, the corporation received substantial monthly income from royalties received from the leases.

{¶ 9} Thomas died in August 2012, and in 2017, Donna moved to a nursing home. At the time Donna moved into a nursing home, the royalties on the leases had diminished and Teepee & Petunia's bank funds were below $100,000. Two of Thomas and Donna's sons, Patrick and Timothy, were concerned that Donna would run out of money. They were upset about, and blamed appellant for, the diminishing

funds. Thus, in October 2017, the two brothers met with Smith to discuss the dwindling assets.

{¶ 10} At the time of the brothers' meeting with Smith, Smith had left the Smith and Condeni firm and was practicing at Cavitch, Familo & Durkin ("Cavitch"). Smith introduced the brothers to defendant-appellee Todd Bartimole, who was an attorney at the Cavitch firm. Timothy and Patrick sought to have Donna's trust and Teepee & Petunia's documents revised to grant Timothy authority over the corporation's accounts and other trust assets. Neither Donna nor appellant was present at the meeting.

{¶ 11} In April 2018, Donna revised her estate plan, which included executing a new will, a 2018 Donna Meehan Family Trust, and an amended operating plan for Teepee & Petunia. Under the amended operating plan for Teepee & Petunia, Timothy became a co-manager with appellant, and under Donna's new trust, Timothy became a co-trustee with appellant. Timothy, Donna, and appellant all signed the necessary documents to effectuate Donna's revised plan.

{¶ 12} Donna died in May 2018. At the time of her mother's death, appellant was (1) a co-trustee with Timothy of the Donna Meehan Family Trust (2018); (2) a co-manager with Timothy of Teepee & Petunia; and (3) an officer of Teepee & Petunia. Under the three subject trusts — the Thomas J. Meehan Trust, the Donna M. Meehan Trust (2010), and the Donna Meehan Family Trust (2018) — appellant receives the same distribution she was always set to receive — 25 percent.

{¶ 13} After Donna's death, in August 2018, attorney Bartimole sent a memorandum to appellant and Timothy. The subject of the memorandum was, "Donna Meehan Estate and Trust Administration." In the memorandum, Bartimole provided an overview of Donna's assets and her estate planning documents. Bartimole also offered suggestions for administering Donna's will and her 2018 family trust. Cavitch's invoices for the work the firm performed indicate the services were rendered for "Donna Meehan (Estate Plan)."

{¶ 14} Appellant had a contentious relationship with Timothy and Patrick, and vice versa. Timothy and Patrick were upset with appellant because they believed she had "blown through" their parents' money. Appellant was upset with the brothers because she believed they were duplicitous in getting their mother to change her estate planning documents. After Donna's death, Timothy and Patrick proposed a settlement agreement to appellant, but she rejected it. Instead, appellant filed a declaratory judgment action in probate court, seeking to overturn Donna's 2018 revised estate plan. Appellant also filed the within legal malpractice action against appellees Smith and Bartimole.

**Appellant's Discovery Deposition Testimony**

{¶ 15} At the discovery deposition in this case, appellant testified that she never signed an engagement letter with appellees. She also testified that she personally never paid them any money (she only issued checks drawn from Teepee & Petunia's accounts at her parents' direction). However, appellant testified that when her parents initially sought estate planning services, and she and other family

members met with appellee attorney Smith, "it was [her] assumption that he was representing the entire family." Appellant testified that she had that assumption because Smith "would always say to [her] specifically if [she] had any questions to make sure [she] [s]hould give him a call."

{¶ 16} Appellant further testified that she "felt [she] was being included" in the meetings with her parents and brothers, and Smith "represented the documents." Donna's estate planning also provided for the possibility that her 2018 trust funds could be used for appellant's own estate planning — a point appellant relies on for her claim of the establishment of an attorney-client relationship. Appellant did admit that Smith never told her he was representing the entire family. She further admitted that Smith never told her he was representing her personally. She testified that Smith never told her in "those specific words" that he was her attorney, but she "*felt* like [she] was his client because [she] was included, as were [her] brothers that were there. It was [her] understanding that [Smith] was representing the family under the estate planning of [her] parents." (Emphasis added.) The record demonstrates that appellant does not have any legal training.

{¶ 17} Appellant specifically testified that "[t]he subject matter for all the meetings [was her] parents' estate and trust." She further testified that after a 2014 meeting she and other family members participated in with appellee Smith, she had no contact with him until 2017. In 2017, Smith introduced appellee Bartimole to the family and told them Bartimole would be helping with Donna's estate documents and provided Medicaid specific estate planning.

{¶ 18} According to appellant, she became Bartimole's client when he started working on the estate planning affairs and felt that this could have occurred before she even met him. Appellant acknowledged that Bartimole too never told her he was her attorney. In fact, she testified that when she first met Bartimole at an April 2018 meeting with Donna, he was representing Donna at that meeting.

{¶ 19} Appellant testified that at the April 2018 meeting when Donna revised her estate plan, attorney Bartimole requested that appellant and Timothy leave the room so that he could speak to Donna alone. After an approximate ten-minute meeting alone with Donna, Bartimole had appellant and Timothy re-enter the room and appellant, Timothy, and Donna all signed the respective documents.

{¶ 20} At the close of discovery, appellees filed a motion for summary judgment asserting that they never entered into an attorney-client relationship with appellant. The trial court granted their motion, stating the following:

> This court is unwilling to extend the attorney-client relationship to beneficiaries and/or trustees of a trust. It is undisputed that there was no express attorney-client relationship as evidenced by the lack of an engagement letter or an invoice for services rendered to plaintiff, for which plaintiff, herself, paid. Further, it is unreasonable for a beneficiary and/or trustee to believe that an attorney-client relationship exists simply because of their status as the trustee and/or beneficiary. Accordingly, as no attorney-client relationship exists, either expressly or implied, no duty is owed that gives rise to a claim for legal malpractice.

{¶ 21} Appellant assigns the following errors for review:

> I. The trial court erred when it ruled that plaintiffs lacked an attorney-client relationship with defendants.

> II. The trial court erred when it ruled that plaintiffs' belief that there was an implied attorney-client relationship was unreasonable.

III. The trial court erred when it ruled that formation of an attorney-client relationship between plaintiffs and defendants required it to extend the attorney-client relationship to beneficiaries and trustees of the trusts.

**Law and Analysis**

### Standard of Review

{¶ 22} This court reviews a trial court's ruling on a motion for summary judgment de novo, applying the same standard applied by the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 23} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. *See* Civ.R. 56(C).

{¶ 24} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. "[A] nonmovant

may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.*, 90 Ohio App.3d 421, 424, 629 N.E.2d 513 (2d Dist.1993). Further, to survive summary judgment, a plaintiff must produce "more than a mere scintilla of evidence" in support of his or her position. *Redd v. Springfield Twp. School Dist.*, 91 Ohio App.3d 88, 92, 631 N.E.2d 1076 (9th Dist.1993), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

{¶ 25} Further, we are mindful that the Supreme Court of Ohio noted in *Peters v. B. & F. Transfer Co.*, 7 Ohio St.2d 143, 219 N.E.2d 27 (1966), "'[u]nder our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his [or her] trial by jury when he [or she] has the right.'" *Id.* at paragraph eight of the syllabus, quoting *J. C. Penny Co. v. Robison*, 128 Ohio St. 626, 193 N.E. 401 (1934), paragraph six of the syllabus. Indeed, the Ohio Supreme Court has indicated that granting of summary judgement "should be encouraged in proper cases." *North v. Pennsylvania RR. Co.*, 9 Ohio St.2d, 169, 171, 224 N.E.2d 757 (1967).

{¶ 26} Appellant's three assignments of error are interrelated and for the ease of discussion will be considered together.

**Legal Malpractice**

{¶ 27} The Supreme Court of Ohio has stated the following regarding a legal malpractice claim:

> To establish a cause of action for legal malpractice, a claimant must demonstrate the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058. Accordingly, as we explained in *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167,"[i]f a plaintiff fails to establish a genuine issue of material fact as to any of the elements, [the attorney] is entitled to summary judgment." *Id*. at ¶ 8.

*New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 25.

{¶ 28} For a malpractice claim to succeed, there must be an attorney-client relationship. Appellees contend that they owed no duty to appellant because they never had an attorney-client relationship with her. The important considerations are the manifest intentions of the attorney and prospective client. *Id*. at ¶ 26.

> A relationship of attorney and client arises when a person manifests an intention to obtain legal services from an attorney and the attorney either consents or fails to negate consent when the person has reasonably assumed that the relationship has been established. [1 Hazard & Hodes, *The Law of Lawyering* (2005) 2-8, Section 2.5]; 1 Restatement of the Law 3rd, The Law Governing Lawyers (2000) 126-128, Section 14. Thus, the existence of an attorney-client relationship does not depend on an express contract but may be implied based on the conduct of the parties and the reasonable expectations of the putative client.

*Id.*

{¶ 29} In *Shoemaker*, the Supreme Court of Ohio found that, generally, potential beneficiaries to a will do not have standing to file a negligence suit against

the attorney who drafted the decedent's will. *Id.* at ¶ 10. The court recognized that "[t]he necessity for privity may be overridden if special circumstances such as 'fraud, bad faith, collusion or other malicious conduct' are present." *Id.* at ¶ 11, quoting *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987).

{¶ 30} The Ohio Supreme Court also recognized that Ohio is among the states that apply a strict privity requirement in the area of estate planning. *Shoemaker*, 118 Ohio St.3d. 226, 2008-Ohio-2012, 887 N.E.2d 1167, at ¶ 14. The court explained that public policy justifies adherence to the strict privity rule because (1) the rule ensures that attorneys may represent their clients without threat of suit from third parties, (2) without the rule, an attorney could have conflicting duties and divided loyalties during the estate planning process, and (3) there would be unlimited potential liability for the lawyer. *Id.* at ¶ 14-15.

### Lack of Express Attorney-Client Relationship Between Appellees and Appellant Individually, or in any of her Roles

{¶ 31} Appellant admits that she never signed an engagement letter with appellees and never paid them any money. The invoices for all services were issued either in Thomas and Donna's names, or just Donna's name. There is no express agreement between appellant individually and appellees.

{¶ 32} There is also no express agreement between appellant, in any of her roles, and appellees. Appellant's reliance on documentation in the record in support of her claim of an attorney-client relationship is misplaced. For example, appellant contends that the "summary of estate plan" for her parents created an attorney-

client relationship between her, as trustee, and appellees. That document, along with other documents in the record, only demonstrate that appellees represented Thomas and Donna Meehan — Thomas and Donna are specifically named as the "clients." Moreover, references in the documentation to appellant and the Meehans' other children and grandchildren did not create an express attorney-client relationship between appellees and appellant or any other beneficiaries or potential trustees.

{¶ 33} Further, appellant's contention that she has the right to sue on behalf of Teepee & Petunia as an officer and manager of the company is misplaced. A limited liability company, such as Teepee & Petunia, exists as an entity separate from its members and is capable of suing and of being sued. *Trickett v. Masi*, 11th Dist. Portage No. 2018-P-0006, 2018-Ohio-4270, ¶ 19, citing *Disciplinary Counsel v. Kafele*, 108 Ohio St.3d 283, 2006-Ohio-904, 843 N.E.2d 169, ¶ 18; *Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 36 (O'Donnell, J., dissenting); *Ogle v. Hocking Cty.*, 4th Dist. Hocking No. 14CA3, 2014-Ohio-5422, ¶ 25. "Thus, members of a limited liability company, even if they are the sole members of the company, do not have standing to sue on its behalf." *Trickett* at *id.*, citing *Ogle*. Appellant's designation as an officer and manager of Teepee & Petunia does not provide her standing in this matter.

**Lack of Implied Attorney-Client Relationship Between Appellees and Appellant Individually, or in any of her Roles**

{¶ 34} We next consider the issue that is the crux of this case, that is, whether appellant had an implied attorney-client relationship with appellees. The Supreme Court of Ohio has held that "an attorney-client relationship may be created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 8. The focus is on the "reasonable expectations of the person seeking representation" in determining whether an attorney-client relationship was formed. *Id.* "A relationship of attorney and client arises when a person manifests an intention to obtain legal services from an attorney and the attorney either consents or fails to negate consent when the person has reasonably assumed that the relationship has been established." *New Destiny Treatment Ctr.*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, at ¶ 26, citing 1 Hazard & Hodes, *The Law of Lawyering*, Section 2.5, at 2-8 and 1 Restatement of the Law 3rd, The Law Governing Lawyers, Section 14, at 126-128.

{¶ 35} In determining whether a putative client's belief was reasonable under the circumstances, the Sixth Circuit Court of Appeals, applying Ohio law, has set forth the following factors to be considered:

> whether (1) the client shared confidential information with the attorney, (2) the attorney offered legal advice or services, (3) the client relied on the advice, (4) the client sought to form an attorney-client relationship, (5) the attorney appeared on behalf of the client in judicial or administrative proceedings, and (6) the attorney prepared legal instruments.

*Hustler Cincinnati, Inc. v. Cambria*, 625 Fed. Appx. 712, 716 (Aug. 14, 2015), citing

*Sayyah v. Cutrell*, 143 Ohio App.3d 102, 757 N.E.2d 779 (12th Dist.2001); *see also*

*Bohan v. McDonald Hopkins, L.L.C.*, 8th Dist. Cuyahoga No. 110060, 2021-Ohio-

4131, ¶ 24-25 (granting summary judgment in favor of law firm because evidence

failed to establish an attorney-client relationship by implication where attorneys

only represented the corporate entity rather than its corporate officers and directors

individually); *Fornshell v. Roetzel & Andress, L.P.A.*, 8th Dist. Cuyahoga Nos. 92132

and 92161, 2009-Ohio-2728, ¶ 51, 59 (granting summary judgment in favor of law

firm because evidence failed to establish an attorney-client relationship where

attorneys only represented the limited liability companies rather than its members

individually).

> The bar for proving an implied attorney-client relationship is high. Innuendos and insinuations do not suffice to form such a bond; the parties must point to "the *manifest intentions* of the attorney and the prospective client." *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, 162 (Ohio 2011) (emphasis added). In this sense, the term "implied attorney-client relationship" is a misnomer. The relationship is implied only in the sense that it does not emerge from a formal contract; it comes from the parties' less formal — yet still manifest — expectations.

(Emphasis sic.) *Hustler* at *id.*

{¶ 36} Appellant contends that she believed appellees were representing her

personally "largely based on confidential information [appellees] solicited from her

as to how she wanted her property, including her inheritance from Tom and Donna,

distributed after she passed."

{¶ 37} In support of her contention that she had an attorney-client relationship with appellees, appellant relies on two memoranda prepared by appellees — one was to Donna and the other was to appellant and her brothers Timothy and Patrick. The memoranda were relative to Donna's estate planning and referenced the possibility of using funds from the Donna Meehan Family Trust to pay for appellant's estate planning. Those memoranda do not evidence an implied attorney-client relationship between appellant and appellees. There is no evidence in the record that the proposal ever came to fruition and even if it had it would have been a gift given by Donna to appellant.

{¶ 38} The record demonstrates that in January 2019, an attorney sent a letter to appellee Smith stating that she represented appellant, and more specifically, that appellant retained her to administer the Thomas Meehan Trust, the Donna Meehan Trust (2010), and co-administer the Donna Meehan Family Trust (2018). Further, there is no evidence that appellees rendered any legal advice to appellant or that she relied on same. Moreover, the appellees never appeared in any judicial or administrative proceedings on appellant's behalf, nor did they prepare any legal documents on her behalf.

{¶ 39} A review of appellant's deposition testimony demonstrates that, by her own admission, appellees were representing her parents. Her testimony on this issue includes the following: (1) her brothers told her they had been in contact with appellee Smith "to discuss my mom's estate planning"; (2) appellees "were presenting that some estate planning needed to de done, some Medicaid planning

for my mother"; (3) the subject matter for all the meetings [was] my parents' estate and trust"; and (4) appellee Smith "said * * * in general to the [family] that he was the lawyer representing the documents and [told the family] what [he was] preparing [them] for the estate of our parents."

{¶ 40} The record further demonstrates that the attorney-client relationship was formed with Thomas and Donna by the fact that appellee Bartimole requested at the April 2018 meeting that appellant and Timothy leave the room so that he could speak to Donna alone. "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). It "exempts from the discovery process certain communications between attorneys and their clients." *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 7 (6th Dist.). The joint-client and common-interest doctrines operate as exceptions to the general rule that voluntary disclosure of communications made with one's attorney to a third party waives the attorney-client privilege. *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. Franklin Nos. 12AP-564 and 12AP-586, 2012-Ohio-4668, 980 N.E.2d 1072, ¶ 26; *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D.Ohio 2010). The joint-client doctrine "'applies when multiple clients hire the same counsel to represent them on a matter of common interest.'" *Id.*, quoting *In re Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 359 (3d Cir.2007).

{¶ 41} Appellee Bartimole's request that appellant and Timothy leave Donna's room so that he could speak to Donna alone evidences that the attorney-client relationship was created with Thomas and Donna and later after Thomas's death, with just Donna.

{¶ 42} In addition to a lack of evidence demonstrating that appellees impliedly represented appellant personally, they also did not impliedly represent her in her capacity as an officer or manager of Teepee & Petunia.

> Ohio law has consistently held that "an attorney's representation of a corporation does not make that attorney counsel to the corporate officers and directors as individuals." *Nilavar v. Mercy Health System Western Ohio* (S.D. Ohio 2001), 143 F.Supp.2d 909, 913. *See, also, Hile v. Firmin, Sprague & Huffman Co., L.P.A.* (1991), 71 Ohio App.3d 838, 595 N.E.2d 1023. Therefore, Ohio law has consistently recognized that because the corporation is a separate entity from its directors and officers, causes of action belonging to the corporation may not be litigated by the officers for their own benefit. *See Maloof v. Squire, Sanders & Dempsey, L.L.P., et al.*, Cuyahoga App. No. 82406, 2003 Ohio 4351.

*Maloof v. Benesch, Friedlander, Coplan & Aronoff*, 8th Dist. Cuyahoga No. 84006, 2004-Ohio-6285, ¶ 17.

{¶ 43} Appellant's request for relief on her claim that she had an attorney-client relationship with appellees based on her position as an officer or manager of Teepee & Petunia is a claim personal to appellant; it does not seek redress for Teepee & Petunia. *See* complaint, ¶ 74, 76 ("Defendants breached their duty to [appellant] when they advised her to sign documents against her interest as Trustee" and "as a direct and proximate result of defendants' negligence, [appellant] suffered damages * * *."). Notwithstanding her claim of damages, appellant admitted that as of the

time of her deposition, she had not suffered any damages — her contention that her brothers were trying to divest her of her 25 percent of the income from the farm was "hypothetical."

{¶ 44} We are also not persuaded by appellant's claim that she had an attorney-client relationship with appellees based on her capacity as a successor and beneficiary under her parents' trusts. According to appellant, she became the successor trustee of her parents' trusts when Donna died in May 2018, and she has standing to sue appellees for malpractice on behalf of the trusts.

{¶ 45} Alternatively, in regard to Thomas's trust, appellant contends that she was in privity with appellee Smith by virtue of her role as successor trustee and beneficiary of the trust and, by operation of law, upon Thomas's death in 2012, she, along with the other beneficiaries, were in privity with appellees. Thus, according to appellant, she has standing to bring this malpractice action against appellees.

{¶ 46} As it relates to Donna's initial trust formed in 2010, appellant was a successor trustee but Donna changed appellant's role as sole successor when she formed her 2018 trust. Under the 2018 trust, appellant became a co-trustee with her brother Timothy. Appellant has no standing on her own to bring a suit on behalf of the 2018 trust.

{¶ 47} Appellant's contention that she had an attorney-client relationship with appellees in her role as a beneficiary also fails. Potential beneficiaries do not have the right to sue the attorney who represented the settlor of a trust for alleged negligence arising from pre-death estate planning matters. *Peleg v. Spitz*, 8th Dist.

Cuyahoga No. 89048, 2007-Ohio-6304; *Lewis v. Star Bank, N.A.*, 90 Ohio App.3d 709, 630 N.E.2d 418 (12th Dist.1993); *see also Meisler v. Weinberg*, 2017-Ohio-1563, 90 N.E.3d 146, ¶ 7 (8th Dist.). A potential beneficiary does not possess the requisite privity to bring a suit for legal malpractice allegedly occurring prior to the settlor's death. *Peleg* at ¶ 17; *Lewis* at 712.

{¶ 48} Appellant's complaints of appellee's negligence related to events that occurred prior to Donna's death; she was not in privity with appellees and therefore, does not have standing to bring this suit.

{¶ 49} Appellant's citation to *David v. Schwartzwald, Robiner, Wolf & Rock Co., L.P.A.*, 79 Ohio App.3d 786, 607 N.E.2d 1173 (8th Dist.1992), is not helpful to her case. In *David*, the attorney-defendant attempted to argue that he was merely a witness in the underlying divorce proceedings, but this court rejected his argument: "plaintiff's evidence indicated that defendant was approached to assist [co-counsel] on discovering [husband's] assets, evaluate a professional economist's appraisal of the business, and render an expert opinion regarding [co-counsel's] attorney fees." *Id.* at 798. On that record, this court concluded that the attorney in *David* was the attorney for the client in the underlying divorce proceeding: "defendant was retained as co-counsel in the divorce proceedings." *Id.* at 791. *David*, therefore, is distinguishable from this case.

{¶ 50} Finally, appellant relies on a report authored by her expert, Kevin Williams, who opined about appellant's relationship with appellees. According to appellant, Williams's report supports "the reasonableness of their objective view

that [appellees] represented them." Thus, according to appellant, "[a]t the very least, this expert opinion raises a general issue of material fact as to the objective reasonableness of whether an implied attorney-client relationship existed between" appellant and appellees.

{¶ 51} Williams's opinion in and of itself does not create a genuine issue of material fact. This court has held that an implied attorney-client relationship involves both an objective and subjective test. *Bohan*, 8th Dist. Cuyahoga No. 110060, 2021-Ohio-4131, at ¶ 23, citing *Stuffleben v. Cowden*, 8th Dist. Cuyahoga No. 82537, 2003-Ohio-6334, ¶ 22. Under the tests, "[a] court must consider (1) whether the putative client believed there was an attorney-client relationship, and (2) whether the putative client's belief was reasonable 'based on the surrounding circumstances.'" *Bohan* at *id.*, quoting *Stuffleben* at ¶ 21-22.

{¶ 52} Appellant averred in an affidavit that she believed she had an attorney-client relationship with appellees. However, for the reasons discussed, her belief was not objectively reasonable based on the surrounding circumstances of this case, including appellant's own admissions and deposition testimony. Upon our de novo review of the record, we agree with the trial court and find that there are no genuine issues of material fact.

{¶ 53} In light of the above, appellant's three assignments of error are without merit and are hereby overruled.

{¶ 54} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

MICHELLE J. SHEEHAN, P.J., and
MARY J. BOYLE, J., CONCUR